HARTMAN UNDERHILL & BRUBAKER LLP
Kevin M. French, Esquire
PA Attorney I.D. No. 47589
Brandon S. Harter, Esquire         Attorneys for Defendants,
PA Attorney I.D. No. 307676        Math-U-See, Inc., Steve Demme
221 East Chestnut Street           and Ethan Demme
Lancaster, PA 17602
(717) 299-7254/(717) 299-3160 (facsimile)

### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF INDIANA
### SOUTH BEND DIVISION

| | |
|---|---|
| SUSAN LYNCH, MATH-U-SEE INDIANA, INC., LISA ANGLE, JIM ANGLE, PAULA HOLMES and MATH-U-SEE OREGON, INC.,<br>　　　　Plaintiffs<br><br>　v.<br><br>MATH-U-SEE, INC., STEVE DEMME, ETHAN DEMME,<br>　　　　Defendants | : <br> : <br> : Civil Action No. 3:11-CV-233-JD-CAN<br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : |

### BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO
### DISMISS IN PART PLAINTIFFS' SECOND AMENDED COMPLAINT

**I.    INTRODUCTION**

Plaintiffs' claims arise from their disagreement with the way in which their distributor relationship with Math-U-See, Inc. ended. The Plaintiffs agreed, in their Distributor Agreements with Math-U-See, Inc., that their business relationship "shall be governed by the laws of the State of Pennsylvania." Nevertheless, Plaintiffs have attempted to insert extraneous claims into this commercial litigation by invoking the laws other jurisdictions and by re-casting their breach of contract claims as tort claims. As a matter of law, there is no basis for the application of the laws of any state other than

{00663395.4}

Pennsylvania. Counts V through X of Plaintiffs' Second Amended Complaint should be dismissed with prejudice.

II. STATEMENT OF FACTS

A. FACTUAL BACKGROUD[1]

During the early 1990s, Defendant Steven Demme, a high school mathematics teacher, developed a line of books and demonstrative materials for teaching mathematics. (Second Amended Compl. (hereinafter "SAC") ¶ 2). Steve Demme's teaching method utilized demonstrative "manipulatives," which are akin to colored plastic building blocks. (SAC ¶ 24). Drawing upon the visual nature of his teaching method, he called his program "Math-U-See." (SAC ¶ 2). This curriculum was particularly appropriate for, and eventually directed to, the developing home-school market. (SAC ¶ 2). Defendant Math-U-See, Inc. was formed by Steve Demme to engage in the sale of the Math-U-See curriculum. (SAC ¶¶ 3, 19). Math-U-See, Inc. is a Pennsylvania corporation which has at all times had its operations located in Lancaster, Pennsylvania. (SAC ¶ 19).

To extend sales of the Math-U-See program across the country, Math-U-See, Inc. contracted with a number of distributors, referred to as "representatives" or "reps." (SAC ¶ 2-3). Beginning no later than 1996, the distributorships were formalized by written Distributor Agreements "that reflected some of, but not all terms of the Agreements

---

[1] At this stage of the proceedings the Court must assume Plaintiffs' allegations are true. Defendants recite these facts solely for the purposes of the present Motion, and do not concede or waive the right to deny these allegations.

between the parties." (SAC ¶ 33). Included in these written agreements was a provision selecting Pennsylvania law. (SAC, Ex. A ¶ 7).

The distributors would purchase Math-U-See materials at fifty-percent of the retail value, and would then sell the materials, covering their own expenses from the profits. (SAC ¶¶ 29-30). Math-U-See, Inc. provided each distributor with an exclusive territory. (SAC ¶ 3). Eventually, Math-U-See, Inc. also provided specific marketing guidelines, e-mail addresses, and telephone numbers to be used for the sales. (SAC ¶ 151). Working collectively, Math-U-See, Inc. and its distributors were successful in making Math-U-See "a leading home-school mathematics curriculum used by tens of thousands of families throughout the United States and indeed the world." (SAC ¶ 7).

Plaintiffs, Susan Lynch, Lisa Angle, Jim Angle, and Paula Holmes, are adult individuals who acted as distributors or "reps" for Math-U-See, Inc. (SAC ¶¶ 14, 16-18).[2] Plaintiffs Math-U-See Indiana, Inc. and Math-U-See Oregon, Inc. are corporations owned by Plaintiffs, Lynch and Holmes, respectively, that were used for their Math-U-See distributorships. (SAC ¶¶ 15, 19). Plaintiffs were among a number of distributors that worked with Math-U-See, Inc. until all such distributorships were terminated in or about 2010. (SAC ¶¶ 40-57, 69).

---

[2] Plaintiff Lisa Angle also alleges that she authored several works that are part of the Math-U-See curriculum, and has filed copyright infringement claims arising from Math-U-See, Inc.'s use of those works. (*See* SAC Counts XI-XX). Defendants do not challenge these claims in the present Motion, and as such, the factual allegations related to such claims are not related herein.

In the fall of 2009, Steve Demme announced to the "reps" that a major change in Math-U-See, Inc.'s business model was coming. (SAC ¶ 61). Steve Demme did so with the assistance of Ethan Demme, his son, who was then the Chief Operations Officer of Math-U-See, Inc. (SAC ¶ 61). At that time, it was announced that Math-U-See, Inc. would begin gradually taking over the shipping aspect of the distributorships so that the distributors could further develop and expand their markets. (SAC ¶ 61). In January, 2010, Steve Demme again reinforced the change to a more centralized method of doing business during the annual conference for Math-U-See, Inc.'s "reps." (SAC ¶ 62).

In April 2010, Steve Demme announced that because of certain credit card regulations ("PCI Compliance"), Math-U-See, Inc. would be terminating the distributorship model on or before July 1, 2010. (SAC ¶¶ 8, 64). In May 2010, Steve Demme announced an official termination date of June 15, 2010, and requested that the "reps" transfer their customer lists and databases to Math-U-See, Inc.'s headquarters in Pennsylvania. (SAC ¶ 64). Within a few months, the Parties' distributorship relationships ended. Plaintiffs allege that they were entitled to distribute Math-U-See materials *indefinitely*, so long as they continued to perform their contractual duties, and that Math-U-See, Inc. breached the Distributor Agreements merely by terminating them. (SAC ¶¶ 124-26, 129-31, 134-36).

B.   PROCEDURAL BACKGROUND

On June 3, 2011, Plaintiffs filed their Complaint in the United States District Court for the Northern District of Indiana. (Doc. 1). On August 2, 2011, Defendants filed their Motion to Dismiss Plaintiffs' Complaint. (Doc. 13). Defendants' Motion was

referred to Magistrate Judge Christopher A. Nuechterlein, and on June 26, 2012, Judge Nuechterlein issued his Report and Recommendation recommending that the Motion to Dismiss be granted in part and denied in part. (Docs. 37 and 46).

In response to the Report and Recommendation, on July 9, 2012, Plaintiffs filed their Second Amended Complaint with Defendants' consent. (Docs. 47 and 48).[3] In their Second Amended Complaint, Plaintiffs have abandoned certain claims and have re-plead certain claims recommended for dismissal in the Report and Recommendation. On July 30, 2012, Defendants filed their Motion to Dismiss in Part Plaintiffs' Second Amended Complaint, with this Brief filed in support thereof.

### III. QUESTIONS PRESENTED

A. WHETHER PLAINTIFFS' CLAIMS, WITH THE EXCEPTION OF PLAINTIFF LISA ANGLE'S COPYRIGHT CLAIMS, ARE GOVERNED BY PENNSYLVANIA LAW?

B. WHETHER PLAINTIFFS' CLAIMS ALLEGING CAUSES OF ACTION UNDER THE LAWS OF STATES OTHER THAN PENNSYLVANIA SHOULD BE DISMISSED?

C. WHETHER PLAINTIFFS' TORT CLAIMS SHOULD BE DISMISSED PURSUANT TO THE "GIST OF THE ACTION" DOCTRINE?

D. WHETHER PLAINTIFFS' BREACH OF FIDUCIARY DUTY CLAIM (COUNT V) SHOULD BE DISMISSED FOR FAILURE TO ALLEGE THE BASIS OF A FIDUCIARY RELATIONSHIP?

---

[3] In the interim, Plaintiffs and Defendants attempted to clarify the disputed issues before the Court by filing a Joint Stipulation and First Amended Complaint. (Docs. 44 and 45). The Parties' efforts, however, were not completed until after the Report and Recommendation had been issued. After reflection upon the Report and Recommendation, the Parties agreed that to further clarify their positions Plaintiffs would file a Second Amended Complaint, with Defendants reserving the right to file the present Motion.

{00663395.4}                        5

E.    WHETHER PLAINTIFFS' CONSUMER PROTECTION ACT CLAIMS (COUNTS VII AND VIII) SHOULD BE DISMISSED FOR FAILURE TO ALLEGE THE BASIS FOR A PRIVATE RIGHT OF ACTION UNDER THOSE ACTS?

*(Suggested responses: in the affirmative).*

## IV. ARGUMENT

Under Rule 12(b)(6), dismissal of a complaint is warranted if the complaint states no actionable claim. Only the well-pleaded allegations need be taken as true and "viewed in the light most favorable to the plaintiff," *Chavez v. Illinois State Police*, 251 F.3d 612, 648 (7th Cir. 2001); *Henderson v. Sheahan*, 196 F.3d 839, 845-46 (7th Cir. 1999), and the complaint must be dismissed when it appears beyond a doubt that the plaintiff can prove no set of facts entitling him to relief. *See Szumny v. American Gen. Fin.*, 246 F.3d 1065, 1067 (7th Cir. 2001).

For a plaintiff to survive a Rule 12 motion, his complaint must consist of "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted). The use of mere labels or formulaic recitals of the elements of a cause of action supported only by conclusory statements is not a sufficient basis for overcoming a motion to dismiss. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-55 (2007). If the alleged conduct "was not only compatible with, but indeed was more likely explained by lawful . . . behavior," then a pleading is deficient. *Iqbal*, 556 U.S. at 680. Indeed, unless the well-pleaded facts "permit the court to infer *more* than the mere possibility of misconduct, the complaint has

alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 680 (quoting Fed. R. Civ. P. 8(a)(2)) (emphasis added).

> A. PLAINTIFFS' CLAIMS, EXCEPT FOR THOSE BY PLAINTIFF LISA ANGLE UNDER THE FEDERAL COPYRIGHT ACT, ARE GOVERNED BY PENNSYLVANIA LAW

To determine the jurisdiction whose laws are applicable to Plaintiffs' state-law claims, this Court should apply the choice of law rules of the forum state: Indiana. The Court's subject matter jurisdiction over Plaintiffs' state-law claims is based upon the diverse citizenship of the Parties. (SAC ¶ 12). "When a federal court sits in diversity, it generally applies the choice of law rules of the state in which it sits." *In re Jafari*, 569 F.3d 644, 648 (7th Cir. 2009), citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941). The Court should apply Indiana choice of law rules to determine which jurisdiction's laws are applicable to Plaintiffs' claims.

Indiana's choice of law rules recognize "that parties may expressly choose the applicable law through a contract." *Wright-Moore Corp. v. Ricoh Corp.*, 908 F.2d 128, 132 (7th Cir. 1990). Indeed, "Indiana choice of law doctrine favors contractual stipulations as to governing law." *Allen v. Great Am. Reserve Ins. Co.*, 766 N.E.2d 1157, 1162 (Ind. 2002) (citations omitted). Even as to claims beyond those which could have been resolved in the language of the contract, "the choice of law provisions of the contract will still apply unless the 'chosen state has no substantial interest' in the litigation or 'application of the law of the chosen state would be contrary to a fundamental policy of the state which has a materially greater interest" than the state whose law is selected by the choice of law provision. *Id.*

Applying Indiana's choice of law rules to the present action, it is clear that the Parties have expressly chosen Pennsylvania law to govern all disputes related to their business relationships. Plaintiffs allege that the terms of their relationships with Math-U-See, Inc. were set forth, at least in part, in their Distributor Agreements which were all substantially identical to the one attached as Exhibit A to their Second Amended Complaint. (SAC ¶ 33). The attached Agreement, and thus all others, stated that:

> 7. This agreement shall be construed in all aspects in accordance with and shall be governed by the laws of the State of Pennsylvania.

(SAC, Ex. A ¶ 7). The business relationships between Math-U-See, Inc. and Plaintiffs were governed by Pennsylvania law, and therefore, Plaintiffs' claims in this litigation are also governed by Pennsylvania law.

Should the Court determine that one or more of Plaintiffs' claims fall beyond the scope of this choice of law provision, the application of Indiana's choice of law analysis would also select Pennsylvania law to apply to Plaintiffs' claims. While Indiana courts have adopted a more liberal approach for choice-of-law determinations than their traditional reliance on *lex loci delecti*, the Indiana Supreme Court has explicitly rejected the use of the "policy analysis" set forth in the Restatement (Second) of Conflict of Laws. *Simon v. U.S.*, 805 N.E.2d 798, 804 (Ind. 2004). Instead, Indiana courts engage in a multi-step inquiry to determine: (1) if "differences between the laws of the states are important enough to affect the outcome of the litigation"; (2) "[i]f such a conflict exists, the presumption is that the traditional *lex loci delicti* rule (the place of the wrong) will apply; (3) this presumption may be overcome if the court is persuaded that "the place of

the tort 'bears little connection' to this legal action"; and (4) "[i]f the location of the tort is insignificant to the action, the court should consider other contacts that may be more relevant." *Simon*, 805 N.E.2d at 805 (quotations and citations omitted). In the event that a court reaches the final step, contacts that should be considered include, but are not limited to, "1) the place where the conduct causing the injury occurred; 2) the residence or place of business of the parties; and 3) the place where the relationship is centered." *Id.*

Pennsylvania law is presumed applicable to Plaintiffs' tort claims under the doctrine of *lex loci delecti* because Pennsylvania is the location of the "last event" for each claim. The place of the harm under *lex loci delecti* is the location of the "last event" necessary to establish the elements of the plaintiff's claim. *Simon*, 805 N.E.2d at 805 (citing *Allen v. Great American Reserve Ins. Co.*, 766 N.E. 2d 1157, 1164-65 (Ind. 2002)). For example, Plaintiffs' claim for breach of fiduciary duty is based upon Defendants' alleged acts terminating the Parties' business relationship and in using confidential information provided by Plaintiffs. (SAC ¶¶ 145-48). This alleged conduct occurred in Pennsylvania, the only location ever alleged as Math-U-See, Inc.'s place of business. (SAC ¶ 19). Similarly, Plaintiffs' claims for tortious interference arise from Defendants' severing of Plaintiffs' lines of communication with their customers. (SAC ¶¶ 166, 171). Again, pursuant to Plaintiffs' own allegations Defendants acted from their centralized operation in Pennsylvania. (SAC ¶¶ 8-9). Pennsylvania was the location of the "last event" of each of Plaintiffs' claims, and therefore, Pennsylvania law is presumed to apply to Plaintiffs' claims.

Pennsylvania also has a strong connections to this legal action, and thus the presumption that Pennsylvania law applies should not be overcome. "The presumption is that the law of the place of the tort applies because in a 'large number of cases, the place of the tort will be significant and the place with the most contacts.'" *Simon*, 805 N.E.2d at 805. An examination of Plaintiffs' Second Amended Complaint as a whole demonstrates Pennsylvania's strong connection to this action. Not only has Math-U-See, Inc. always been located in Pennsylvania, Plaintiffs' own allegations state that it was Math-U-See, Inc.'s process of becoming more "centralized" in Pennsylvania that was the root cause of their alleged injuries:

> [i]n short, the United States distributors, including the plaintiffs, would no longer sell Math-U-See materials; the Rep Model was over. All sales and shipping would be done from the corporate office. . . .

(SAC ¶ 8). Pennsylvania bears a significant connection to this litigation, and thus, the presumption that Pennsylvania law applies should not be overcome in this case.

Finally, even assuming *arguendo* that the Court would engage in an examination of the available contacts, rather than applying the presumption that Pennsylvania law applies, such an examination further demonstrates that Pennsylvania law should apply. For the reasons discussed above, Pennsylvania was: (1) central to the Parties' relationship; (2) was the location of significant events, including Math-U-See, Inc.'s allegedly tortious conduct; (3) is the residence of all Defendants; and (4) and is the one

state all Parties have in common.[4] As a result, the most significant contacts in this action are with Pennsylvania, and Pennsylvania law should be applied to Plaintiffs' tort claims.

### B. PLAINTIFFS' CLAIMS PURPORTING TO INVOKE THE LAWS OF STATES OTHER THAN PENNSYLVANIA SHOULD BE DISMISSED

As set forth above, Pennsylvania law should be applied to Plaintiffs' claims, and any claims invoking the laws of other states should be dismissed. While traditionally choice of law analysis is applied to determine which state's laws will apply to a given claim, the same analysis has also been applied to dismiss claims brought under the laws of other jurisdictions. *Wright-Moore*, 908 F.2d at 132-33 (determining whether choice of law provision selecting New York law barred Indiana Franchise Act claim); *In re Bridgestone/Firestone, Inc. Tires Products Liability Litigation*, 155 F.Supp.2d 1069 (S.D. Ind. 2001) (dismissing consumer protection act claims of jurisdictions other than the state whose laws were selected by choice of law analysis).

Plaintiffs, however, ignore Indiana's choice of law rules by asserting at Counts VI through VIII causes of action arising under Indiana, Idaho, and Tennessee law, respectively. (SAC ¶¶ 150-162). As set forth above, the Parties' selected law, Pennsylvania law, should be used unless the "chosen state has no substantial interest in the litigation" or the application of its laws would be contrary to the policy of a state with

---

[4] Judicial economy also weighs in favor of applying Pennsylvania law. Indiana courts have explicitly rejected the doctrine of *depecage*, the use of different state's laws within a single count or claim. Plaintiffs are residents of various states but jointly raise a number of claims. (*See* SAC ¶¶ 138-149, 163-172). Given the rejection of *depecage*, the Court will be forced to apply one state's laws to each Count, potentially forcing one or more Plaintiffs to utilize the law of a state to which that person has no connection. To avoid this result, the laws of the one state central to this dispute for all parties, Pennsylvania, should be utilized.

a "materially greater interest than the chosen state." *Wright-Moore*, 908 F.2d at 132. Neither of these is true here, as the chosen state, Pennsylvania, has a significant interest in the present litigation and no other state, including Indiana, Idaho, and Tennessee, has a "materially greater interest" than does Pennsylvania. Math-U-See, Inc. is a Pennsylvania corporation with its sole office located in Pennsylvania, and the only location common to all Parties is Pennsylvania. Indeed, it is the significant involvement of actions occurring in Pennsylvania which also leads to the selection of Pennsylvania law even absent the Parties' contractual agreement to do so. Therefore, Plaintiffs' claims at Counts VI, VII, and VII should be dismissed with prejudice.

### C. PLAINTIFFS' CLAIMS RE-CASTING THEIR BREACH OF CONTRACT CLAIMS AS TORTS SHOULD BE DISMISSED PURSUANT TO THE "GIST OF THE ACTION DOCTRINE"

Plaintiffs' tort claims for breach of fiduciary duty (Count V), intentional interference with existing contractual relationships (Count IX), and intentional interference with prospective contractual relationships (Count X) are all barred by the "gist of the action" doctrine. Under Pennsylvania law, the "gist of the action" doctrine operates to preclude a plaintiff from re-casting ordinary breach of contract actions into tort actions. *See Hart v. Arnold*, 884 A.2d 316, 339-40 (Pa. Super. 2005). "The important difference between contract and tort actions is that the latter lie from the breach of duties imposed as a matter of social policy while the former lie for breach of duties imposed by mutual consensus." *Etoll, Inc. v. Elias/Savion Advertising, Inc.*, 811 A.2d 10, 14 (Pa. Super. 2002) (citation omitted). "In other words, a claim should be limited to a contract claim when 'the parties' obligations are defined by the terms of the contracts,

and not by the larger social policies embodied by the law of torts.'" *See id., quoting Bohler-Uddeholm Am., Inc. v. Ellwood Group, Inc.*, 247 F.3d 79, 104 (3d. Cir. 2001). Thus, the ultimate question for purposes of the proper application of the "gist of the action" doctrine concerns the origin of the duty allegedly breached by the defendant. *See Etoll*, 811 A.2d at 14.

A review of the Plaintiffs' tort claims demonstrates that these claims are based upon the contractual relationships between the Parties, not upon broader social duties imposed by the law of torts. The "gist of the action" doctrine bars tort claims: "(1) arising solely from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where the liability stems from a contract; or (4) where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract." *Hart*, 884 A.2d at 340 (citations omitted). The "gist" of Plaintiffs' tort claims is the same as Plaintiffs' breach of contract claims: Defendants allegedly injured Plaintiffs by ending the Parties' business relationships. Indeed, absent their distributorships, a contractual relationship, Math-U-See, Inc. would have had no duty to sell Plaintiffs Math-U-See materials. Moreover, Plaintiffs demand the same damages for both their breach of contract and tort claims: the value of their distributorships. (*Compare* Counts I-III *with* Counts V, IX-X). Plaintiffs' tort claims are mere re-characterizations of their breach of contract claims, and therefore, Plaintiffs' claims at Counts V, IX and X should be dismissed with prejudice.

D.     **PLAINTIFFS' BREACH OF FIDUCIARY DUTY CLAIM (COUNT V) SHOULD BE DISMISSED FOR FAILURE TO ALLEGE THE BASIS OF A FIDUCIARY DUTY**

Plaintiffs assert at Count V of their Second Amended Complaint that Steve Demme breached a fiduciary duty to Plaintiffs. Plaintiffs fail to cite any legal authority that suggests a fiduciary relationship exists between contracting parties, even if those parties are in a long-term distribution relationship as Plaintiffs have alleged here. Pennsylvania courts, like the courts of many other jurisdictions, have rejected plaintiffs' claims that such relationships form the basis for fiduciary duties. *Bishop v. GNC Franchising, LLC*, 403 F.Supp.2d 411, 423-24 (W.D. Pa. 2005) (no fiduciary duty, even in franchise relationships, under Pennsylvania, Tennessee, South Dakota, Louisiana, Wisconsin, Virginia, Maryland, or Illinois law). There is no basis as a matter of law for the assertion of a claim for breach of fiduciary duties based upon the Parties' alleged contractual relationship, and therefore, Plaintiffs' breach of fiduciary duty claim (Count V) should be dismissed with prejudice.

E.     **PLAINTIFFS' CONSUMER PROTECTION ACT CLAIMS (COUNTS VII AND VIII) SHOULD BE DISMISSED FOR FAILURE TO ALLEGE THE BASIS FOR A PRIVATE RIGHT OF ACTION**

As set forth above, Plaintiffs' consumer protection act claims (Counts VII and VIII) should be dismissed because Pennsylvania law, not Idaho or Tennessee law, governs Plaintiffs' claims in this litigation. Alternatively, Plaintiffs' claims should also be dismissed because Plaintiffs fail to allege the basis for a private cause of action under the Idaho Consumer Protection Act (the "ICPA") or the Tennessee Consumer Protection Act (the "TCPA").

Plaintiffs fail to allege a claim under the ICPA because they fail to allege any unfair conduct by Defendants that caused them harm in the course of the purchase of "goods or services." Private causes of action exist under the ICPA only for a person "who purchases or leases goods or services and thereby suffers any ascertainable loss of money or property, real or personal. . . ." I.C.A. § 48-608(1). While additional conduct may violate the ICPA and permit actions to be taken by Idaho's Attorney General, the only statutory private right of action is for those injured by the purchase or lease of goods or services. *Compare id.* § 48-603 (deceptive practices) *with id.* § 48-608 (private causes of action). The only purchases alleged by Plaintiffs were the Math-U-See materials purchased during the course of the Parties' business relationships. (*See* SAC ¶ 29). Plaintiffs do not allege any unfair practices were committed by Defendants in the course of such sales that resulted in damages Plaintiffs now seek to recover. To the contrary, Plaintiffs' claims and alleged injuries arise from the termination of the Parties' business relationships, i.e., from being ***prohibited*** from purchasing goods from Math-U-See, Inc.

Similarly, Plaintiffs have failed to state the basis for a private right of action under the TCPA. As a threshold matter, Plaintiffs fail to even allege which of the statutory prohibitions was allegedly violated by Defendants. (SAC ¶¶ 159-162). As Plaintiffs relied upon the "catch-all" provision of the ICPA, I.C.A. § 48-603(17), presumably Plaintiffs intend to rely upon the parallel "catch-all" provision in the TCPA, Section 47-18-104(b)(27). This Section, however, is explicitly limited to enforcement by Tennessee's Attorney General. T.C.A. § 47-18-104(b)(27) ("enforcement of this subdivision (b)(27) is vested exclusively in the office of the attorney general and reporter

and the director of the division"). Like the ICPA, Plaintiffs have failed to allege the basis for a private right of action under the TCPA.

Therefore, in the alternative, Plaintiffs' claims under the ICPA (Count VII) and TCPA (Count VIII) should be dismissed for failure to state a claim upon which relief may be granted.

## V.  CONCLUSION

For the reasons set forth above, Defendants, Math-U-See, Inc., Steve Demme and Ethan Demme, respectfully request that the Court grant their Motion and dismiss Counts V-X of Plaintiffs' Second Amended Complaint.

HARTMAN UNDERHILL & BRUBAKER LLP

Date: 7/30/12

By: _____
Kevin M. French, PA Attorney I.D. No. 47589
(admitted *pro hac vice*)
kevinf@hublaw.com
Brandon S. Harter, PA Attorney I.D. No. 307676
(admitted *pro hac vice*)
brandonh@hublaw.com
221 East Chestnut St.
Lancaster, PA 17602

D. Michael Anderson (20770-53)
mike.anderson@btlaw.com
Eric R. Thomason (28805-71)
eric.thomason@btlaw.com
BARNES & THORNBURG LLP
500 1st Source Bank Center
100 North Michigan
South Bend, Indiana 46601
Telephone: (574) 233-1171
Facsimile: (574) 237-1125

Attorneys for Defendants, Math-U-See, Inc., Steve Demme and Ethan Demme