## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## SOUTH BEND DIVISION

---

SUSAN LYNCH,
MATH-U-SEE INDIANA, INC.,
LISA ANGLE and JIM ANGLE,
PAULA HOLMES, and
MATH-U-SEE OREGON, INC.,

                                            Court File No.: 3:11-cv-00233-JD-CAN

                    Plaintiffs,

v.

MATH-U-SEE, INC., STEVEN DEMME
and ETHAN DEMME,

                    Defendants.

---

## PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS IN PART PLAINTIFFS' SECOND AMENDED COMPLAINT

Plaintiffs submit this brief in opposition to the motion of Defendants to dismiss the portions of the Second Amended Complaint. Predicated mostly upon arguments of choice-of-law, the motion should be denied because:

- The Distributor Agreement's choice-of-law clause, by its terms, applies only to the construction of the agreement and does not, by its terms, extend to the relationship between the parties;

- Under Indiana's choice-of-law rules, the place of the injury determines the law that governs tort claims -- for breach of fiduciary duty (Count V) and tortious interference (Counts IX and X)(collectively, the "Tort Claims"); because the injuries were sustained where the Plaintiffs resided or had their businesses, they are not governed by Pennsylvania law;

- Counts VI, VII, and VIII of the Second Amended Complaint, raising claims under the statutes of Indiana, Tennessee and Idaho (the "Statutory Claims"), are similarly governed by the law of the place of injury; moreover, these claims arise under state statutes that are strong expressions of those states' public policies, which make a choice of law contrary to their terms inapplicable;

- Even if Pennsylvania law were applicable to the Tort Claims, the "gist of the action" doctrine does not preclude them because they arise from breaches of duty imposed by the law, not by contract;

- Plaintiffs have stated a claim for breach of fiduciary duty, whether under Pennsylvania law or otherwise; and

- Plaintiffs have stated claims under the Idaho and Tennessee statutes.

<u>**Argument**</u>

## I.   PLAINTIFFS' TORT AND STATUTORY CLAIMS ARE NOT GOVERNED BY PENNSYLVANIA LAW

The parties agree that this Court, sitting in diversity, should apply Indiana choice-of-law rules to determine which jurisdiction's laws apply to Plaintiffs' claims.  Further, both sides recognize that under Indiana law, the parties may choose applicable law through a contract.  However, the choice-of-law provision in the Distributor Agreement is limited to the construction of the agreement and does not purport to govern the relationship between the parties, and, in any event, under Indiana's choice-of-law rules, Pennsylvania does not govern Plaintiffs' claims that are not based on the contract.

### A.   The Choice-of-law Provision in the Distributor Agreement Does Not Apply To Claims That Are Not Based on The Contract.

The choice-of-law clause in the Distributor Agreement states:  "This Agreement shall be construed in all aspects in accordance with and shall be governed by the laws of the State of Pennsylvania."  Thus, by its terms, the parties chose Pennsylvania law only to construe and govern the *agreement*.  They did not purport to have Pennsylvania

law govern their relationships generally or to reach tort claims or claims under state statutes. In *Morgan Trailer Manufacturing Co. v. Hydraroll, Limited,* 759 A.2d 926 (Pa. Sup. 2000), a distribution agreement stated, "This agreement and each contract made between the parties hereunder for the sale of the products will in all respects be interpreted in accordance with the laws of England and the parties hereby submit themselves to the exclusive jurisdiction of the English courts." The Superior Court held that the plaintiff's claims for tortious interference with employment relationships, misappropriation of trade secrets, tortious interference with customers, unfair competition, conspiracy and for punitive damages "are all separate from the contract because they do not involve the sale of products. While Morgan certainly had a contract with appellees, that does not mean that all future relations with appellees are somehow connected to that contract." *Id.* at 931-32.

Similarly, in *Jiffy Lube Intern, Inc. v. Jiffy Lube of Pennsylvania, Inc.*, 848 F. Supp. 569 (E.D. Pa. 1994), the court held that a choice-of-law provision that stated "This agreement shall be construed, interpreted and enforced in accordance with the laws of the state of Maryland" did not encompass tort claims of fraud and misrepresentation. The court observed: "Contractual choice-of-law provisions, however, do not govern tort claims between contracted parties unless the fair import of the provision embraces all aspects of the legal relationship. Courts analyze choice-of-law provisions to "determine, based on their narrowness or breadth, whether the parties intended to encompass all elements of their association." *Id. at 576. See also Composiflex, Inc. v. Advanced Cardiovascular Systems, Inc.*, 795 F. Supp. 151, 157 (W.D. Pa. 1992); *Aamco Transmissions, Inc. v. Marino,* 1992 WL 38120 at *6 n.15

3

(E.D. Pa. 1992) (narrow choice-of-law provisions are generally held insufficient to encompass the contracting parties' tort claims); *Wright v. McDonald's Corp.*, 1993 WL 53582 at \*7 n.6 (E.D. Pa. 1993); *Coram Health Care Corp. v. Aetna U.S. Healthcare Inc.*, 94 F. Supp.2d 589, 593 (E.D. Pa. 1999) (provision stating, "this agreement shall be governed by the state of Delaware" meant "that only claims relating to the construction and interpretation of the contract will be judged according to Delaware law.")

For these reasons, the limited terms of the choice-of-law provision limits the choice of Pennsylvania law only to the agreement and its construction, not the parties' relationship.  Therefore, the Pennsylvania choice-of-law provision is inapplicable to the both the Tort Claims and Statutory Claims.

**B.      Under Indiana's Choice-of-law Rules, the Tort Claims are Governed by the Places of the Injury**

Because the contractual choice-of-law provision is inapplicable to the tort and statutory claims, this Court must look to Indiana's choice-of-law rules to determine which state's law applies.  *Zimmer, Inc. v. Sharpe*, 651 F. Supp. 2d 840, 842 (N.D. Ind. 2009) ("A federal court sitting in diversity must apply the forum state's choice-of-law rules.")  (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). Ordinarily, Indiana courts will apply the law of the forum, unless there is a contention that another state's law applies.  Defendants have not acknowledged a difference in the laws of Pennsylvania and Indiana with respect to the Tort Claims, but there indeed is such a difference to the extent that Defendants contend that Pennsylvania's gist of the action doctrine, which does not exist in Indiana, precludes those claims.  In the case of such a conflict, Indiana applies the following rules:

4

> As a preliminary matter, the court must determine whether the differences between the laws of the states are 'important enough to affect the outcome of the litigation.' If such a conflict exists, the presumption is that the traditional *lex loci delicti rule* (the place of the wrong) will apply. Under this rule, the court applies the substantive laws of 'the state where the last event necessary to make an actor liable for the alleged wrong takes place.'

*Simon v. U.S.*, 805 N.E.2d 798, 805 (Ind. 2004) (citing *Hubbard Mfg. Co., Inc. v. Greeson*, 515 N.E.2d 1071, 1073 (Ind. 1987)). Only if the place of the tort bears little connection to the litigation do courts look to other factors (*e.g.,* the place where the conduct causing the injury occurred). *Id.* (citing *Greeson*, 515 N.E.2d at 1074). "[T]he substantive law of the 'place of the tort' is applied – that is, the state in which the last event necessary to make the defendant liable for the alleged wrong took place, typically the state in which the injury occurred." *In re Bridgestone/Firestone, Inc. Tires Products Liability Litigation*, 155 F. Supp.2d 1069, 1079 (S.D. Ind. 2001) (citing *Greeson*, 515 N.E.2d 1071, 1073).

Defendants' argument that the "last event" necessary to establish the elements of the plaintiffs' Tort Claims is where Defendants' conduct occurred is erroneous; the last event necessary to establish the elements of the plaintiffs' claims is the injury. The Supreme Court of Indiana has held that the place of the injury is the last event necessary to establish the elements of a tort claim:

> In this case, the allegedly negligent acts of the United States, the publication of the inaccurate chart and negligence of the air traffic controllers, occurred prior to the plane crash. Therefore[,] the last event necessary to make the United States liable was the injury, which occurred when the plane crashed in Kentucky and the decedents died. Consequently, under *lex loci delicti*, Kentucky law would apply.

*Simon*, 805 N.E.2d at 806; *see also, Agricultural Management Development, Inc. v. National City Bank*, 2003 WL 21919184 at * 1, n.3 (N.D. Ind. 2003) (holding that Indiana

applies the substantive law of the state where the injury occurred); *Klein v. DePuy, Inc.*, 506 F.3d 553, 556 (7th Cir. 2007) ("As we have previously stated, Indiana's *lex loci delicti* principle points to the location of the injury, not the defendant's corporate headquarters, as the source of law.") (citing *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1016 (7th Cir. 2002)).

Where the tort is not for personal injury, the locus of the last event is still the injury. Thus, where a journalist alleged defamation and interference with a prospective business advantage against a repossessor, California was the *lex loci delicti* because the last event necessary to make the repossessor liable for defamation and interference with economic advantage was the injury suffered by the journalist in California. *Popovich v. Weingarten*, 779 F. Supp.2d 891, 896-897 (N.D. Ind. 2011). *See also Zandman v. Joseph*, 102 F.R.D. 924, 930 (N.D. Ind. 1984) (*lex loci delicti* in fraud case was where the loss was suffered); *Allen v. Great American Reserve Ins. Co.*, 766 N.E.2d 1157, 1164-65 (Ind. 2002) (reliance and damage are last events in fraud claim).

Thus, applying *lex loci delicti*, the places of the injuries are the locations where the Plaintiffs resided and did business: Indiana, Idaho and Oregon. These are the place where their businesses, contracts and contractual relations were located and destroyed, as a result of Defendants' breaches of fiduciary duty and tortious interference with contract.

Because those states undeniably have a connection to the claims asserted in the Second Amended Complaint, it is not necessary to look to other factors, such as the locus of the conduct causing the injury.

Defendants' argument that the place of the wrong is Pennsylvania because "Defendants' alleged acts terminating the Parties' business relationship and in using confidential information provided by Plaintiffs" (Def. Brief at 9) occurred there is erroneous because those acts, without injury, do not constitute a legal wrong.  For example, if Defendants had engaged in the allegedly wrongful acts, then provided adequate compensation to Plaintiffs, there would be no injury.  But the compensation would have been paid to them in their resident states; likewise, the losses the Plaintiffs suffered were in their resident states, not in Pennsylvania.

The same analysis applies to the Statutory Claims:  the places where Plaintiffs suffered their injuries – *i.e.*, where they lost their businesses – are the places whose law governs under Indiana choice of law principles.  As shown below, the Statutory Claims are based on statutes that express strong state policies of the jurisdictions that enacted them, and they are applicable for that reason as well.

**C.    Alternatively, This Court Cannot Apply Pennsylvania Law to Preclude the Claims Under the IFA and the TCPA Because to do so Would Violate Indiana and Tennessee Public Policy**

Because Indiana choice-of-law principles looks to the place of injury, and Indiana, Idaho and Tennessee are the places where the plaintiffs sustained their injuries under the Statutory Claims, the Statutory Claims stand, and should not be dismissed. No further analysis is necessary.

Alternatively, however, Indiana choice-of-law principles defer to the laws of states that express a strong public policy that would be contrary to Pennsylvania law.

The Indiana Franchise Law specifically provides that it is unlawful for a franchise agreement to contain a provision "requiring the franchisee to prospectively assent to a

7

release, assignment, novation, waiver, or estoppel which reports to relieve any person from liability to be imposed by this chapter . . .." Ind. Code § 23-2-2.7-1(5). The statute also makes it unlawful for a franchisor to include a provision in a franchise agreement "limiting litigation brought for breach of the agreement in any manner whatsoever." Ind. Code § 23-2-2.7-1(10).      Therefore, a franchisor may not waive the legislatively provided protections "whether directly through waiver provisions or indirectly through choice of law." *Wright-Moore Corp. v. Ricoh Corp.*, 908 F.2d 128, 132 (7th Cir. 1990).

In *Wright-Moore Corp. v. Ricoh Corp.*, 908 F.2d 128, 132 (7th Cir. 1990), the Seventh Circuit held that the "nonwaiver provisions of the statute" expressed a public policy "sufficient to render the choice to opt out of Indiana's franchise law one that cannot be made by agreement." 908 F.2d at 132. "We believe that [the statements in the Indiana Franchise Act] evince a legislative policy against a waiver of Indiana franchise law through choice of law provisions . . . ." *Wright-Moore*, 908 F.2d at 134.

Further, the Court found that Indiana had a materially greater interest in the litigation than New York, the contractually chosen state, because the putative franchisee, Wright-Moore, was located in Indiana, had its documents and witnesses in Indiana, and the contract was partially performed in Indiana, while New York was only the state of incorporation of the putative franchisor. *Id.* In this case, Pennsylvania's interest is, by the contract, limited to construction of the distribution agreement.[1] The interests protected by the Indiana franchise law -- protection of the putative franchisee from wrongful termination, encroachment by the franchisor, and forced choices for goods or services, among other things (See Ind. Code 23-2-2.7-1) are all centered in

---

[1] In *Wright-Moore,* by contrast, the choice of law provision in the agreement provided that "New York law would govern any disputes." 908 F.2d at 130.

Indiana and are interests as to which Pennsylvania law is indifferent or silent. *Dearborn v. Everett J. Prescott, Inc.*, 486 F. Supp. 2d 802, 812 (S.D. Ind. 2007) ("But Indiana will not enforce a contractual provision, including a choice of law provision, if enforcement would be contrary to Indiana's public policy.")[2]  Here, application of Pennsylvania law would be contrary to the public policy of Indiana because Pennsylvania has no similar franchise law, and Indiana also has a materially greater interest in the litigation than Pennsylvania.

Likewise, the Angles' claim under the Tennessee Consumer Protection Act (the "TCPA") is not precluded by choice of law principles for reasons similar to those applicable for the Indiana Franchise Act.[3]  First, the TCPA expressly rejects a choice of law of another jurisdiction: "Any provision in any agreement or stipulation, verbal or written . . . requiring the application of the laws of another state with respect to any claim a raising under or relating to the Tennessee Consumer Protection Act and related acts set forth in this title is void as a matter of public policy." Tenn. Code § 47-18-113. Therefore, even if otherwise applicable, the contractual choice of law provision cannot preclude application of the TCPA because it would contravene Tennessee's public policy to enforce a waiver of the Angles' claim under the TCPA. *Cf. Roopchan v. ADT*

---

[2] Further: (1) Lynch is a citizen and resident of Indiana; (2) MUS-Indiana is an Indiana corporation with its principal place of business in Indiana; (3) Lynch and MUS-Indiana operated the franchised business in Indiana and the contract was, in large part, performed there; (4) witnesses and documents are in Indiana; (5) Demme frequently visited Indiana to transact business (e.g., he told Jim Lynch that he was committed to the rep model while visiting Indianapolis; at dinner with Sue and Jim Lynch in Sound Bend, Indiana, he reiterated his commitment to the rep model); (6) Lynch's first contact with Defendants was in Indiana; (7) Lynch and MUS-Indiana built the market for Math-U-See's products in Indiana; and (8) the effects of Defendants' unlawful conduct are felt in Indiana.

[3] The Complaint alleges that the Angles are entitled to the protection of the Tennessee Act because they lived in Tennessee when they built the business that Defendants wrongfully terminated, established and operated a shipping center there that continued to operate until termination, and that they were injured as a result of defendants' wrongful acts.  Complaint ¶ 160.

*Sec. Sys., Inc.*, 781 F. Supp. 2d 636, 648 (E.D. Tenn. 2011) (holding that exculpatory clauses are void if they violate public policy (*e.g.*, there has been a violation of the TCPA)).

While public policy can only overcome a choice of law provision in Indiana if the state whose public policy is at issue has a greater interest than the chosen state's law, Tennessee has a materially greater interest than Pennsylvania in this litigation: (1) The Angles asked Steve Demme if they could take over the Tennessee territory for Math-U-See and he agreed provided that the Angles moved to Tennessee to service the territory; (2) the Angles and their seven children (at the time) moved to Tennessee in order to build the Tennessee market for Math-U-See; (3) the Angles established a warehouse and distribution center in Tennessee; (4) while the Angles moved back to Idaho in 2007, they maintained a shipping center in Tennessee; and (5) the termination of the contract destroyed the business in Tennessee.

Pennsylvania's only interests in this dispute are limited to the construction of the agreement and pale in comparison to Tennessee's interests. Thus, Tennessee has a materially greater interest than Pennsylvania in the litigation and Tennessee's public policy overrides any application of the choice of law provision in the franchise agreement.

For these reasons, Indiana's choice of law rules dictate that the IFA and TCPA claims should not be dismissed.

**D.**   **Under Indiana's Choice-of-law Rules, the ICPA Claim is Governed by Idaho Law**

Finally, the Idaho Consumer Protection Act ("ICPA") should prevail over any purported choice of another state's law.[4]   The ICPA provides the plaintiffs with a private right of action to redress wrongs in connection with the purchase of goods and services; Pennsylvania's Unfair Trade Practices and Consumer Protection Law only provides a private right of action to persons who purchase or lease goods or services "primarily for personal, family or household purposes."   Penn. Stat. § 201-9.2.   Pennsylvania courts have held that purchasers of goods or services for business purposes have no private right of action under the Pennsylvania statute.   *See Balderston v. Medtronic Sofamor Danek, Inc.*, 152 F. Supp. 2d 772, 780 (E.D. Pa. 2001); *Springboro Volunteer Fire Dept. and Relief Ass'n v. J.C. Moore Industries Sales Corp.*, 50 Pa. D. & C.3d 479, 482-483 (Pa. Comm. Pleas 1988).

The ICPA, on the other hand, provides a private right of action to "Any person who purchases or leases goods or services and thereby suffers any ascertainable loss . . ." Idaho Code § 48-608(1).   Because the difference in laws is significant enough to impact the outcome of litigation, this Court must apply the state's law where the last event giving rise to the claim occurred.   *Simon*, 805 N.E.2d at 805.   Here, the Angles' suffered injury in Idaho: when the distribution agreement was terminated and when the lawsuit was filed, the Angles were citizens and residents of Idaho.

Idaho also bears more than just a little connection to the litigation.   The Angles were citizens and residents of Idaho when the lawsuit was filed and when Defendants

---

[4] The Complaint alleges that the Idaho Act expresses a strong public policy of Idaho and applies because the injury sustained by the Angles was sustained in Idaho.   Complaint ¶ 157.

violated the ICPA.  It is also where the effect of Defendants' unlawful conduct was felt and where the franchised business was operated.  Thus, the *lex loci delicti* principle applies Idaho law to the Angles' claim under the ICPA (it is where the Angles' were injured) and Idaho bears more than a little connection to the action.

For this reason, Indiana's choice of law rules dictate that the ICPA claim should not be dismissed.[5]

## II.   THE "GIST OF THE ACTION" DOCTRINE DOES NOT BAR PLAINTIFFS' TORT CLAIMS

The "Gist of the Action" doctrine comes into play only if Pennsylvania law governs the tort claims; as has been shown, however, Indiana chooses the place of the injury; hence, defendants' gist-of-the-action arguments do not properly apply to the Tort Claims.

Even if Pennsylvania law applied, the gist of the action doctrine does not bar the Tort Claims.  As Defendants note, the gist of the doctrine precludes only tort claims that are recast as contract claims: "The important difference between contract and tort actions is that the latter lie from the breach of duties imposed as a matter of social policy while the former lie for the breach of duties imposed by mutual consensus." *Bohler–Uddeholm America, Inc. v. Ellwood Group, Inc.*, 247 F.3d 79, 103–104 (3d Cir.2001) (quoting *Redevelopment Auth. of Cambria County v. International Ins. Co.*, 454 Pa.Super. 374, 685 A.2d 581, 590 (Pa.Super.Ct.1996) (en banc)).  Thus, the gist of

---

[5] The same analysis applies to the TCPA which provides franchisees with a private right of action. *Compare* Tenn. Code § 47-18-109, *with* Penn. Stat. § 201-9.2. Thus, even if other reasons for applying the TCPA are insufficient, Indiana's choice of law rule applies Tennessee law to the claims under the TCPA. Tennessee law conflicts with Pennsylvania law and the last event giving rise to the claim was the injury to the business in Tennessee.  The Angles' business suffered injury in Tennessee, indicating that Tennessee bears more than a little connection to the litigation.

the action doctrine will bar only those tort claims "(1) arising solely from a contract between the parties; . . . (2) where the duties allegedly breached were created and grounded in the contract itself; . . . (3) where the liability stems from a contract; . . . or (4) where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract." *Etoll, Inc. v. Elias/Savion Advertising, Inc.*, 811 A.2d 10, 19 (Pa. Super. Ct. 2002).   Moreover, The court in *PPG Industries v. Generon IGS, Inc.*, 760 F. Supp. 2d 520, 528 (W.D. Pa. 2011) warned that, "A court should be cautious when determining that a claim should be dismissed under the gist of the action doctrine, due in part to the fact that Fed. R. Civ. P. 8(d)(2) [footnote omitted] allows parties to plead multiple claims as alternative theories of liability."

With respect to the tortious interference claims, "A tortious interference with contract claim is barred by the gist of the action doctrine if it is not independent of a contract claim that is pled along with it." *Alpart v. Gen. Land Partners, Inc.*, 574 F. Supp. 2d 491, 505 (E.D. Pa. 2008).   In this case, the tortious interference claims allege that defendants interfered with Plaintiffs' contracts by "taking the Angles' customer lists and by otherwise cutting off the Plaintiffs' contacts with their customers" (Complaint ¶ 166) and by interfering with their prospective business relations by "engaging in deceptive conduct and abuse of their fiduciary relationship" (Complaint ¶ 171).   While these events were in concert with the termination of the distributorship relationship, the defendants' tortious interference was legally independent of the contract or the termination.   The wrongful acts of the defendants – *i.e.*, interfering with the distributorship agreements, taking the customers by deception and disrupting Plaintiffs' prospective relations – could have been committed by a third party, independently of the

relationship that existed between plaintiffs and defendants.  Hence, the gist of those

wrongs was not based in the contract, but in the independent duty that the law imposes

upon society not to interfere with others' contracts.  *See White v. George*, 2004 WL

1739862, *141 (Pa. Com. Pl. 2004).  Thus, this case is not like *Brown & Brown, Inc. v.

Cola*, 745 F. Supp.2d 588, 621-22 (E.D. Pa. 2010) in which the contracts at issue

contained non-solicitation provisions that made the tortious interference claims

duplicative of the contract; there are no such provisions here.  The tortious interference

claims are independent, and the claims should not be dismissed.

> With respect to the fiduciary duty claims, the *Etoll* court observed:

> A "special relationship" is one involving confidentiality, the repose of
> special trust or fiduciary responsibilities. *See Commonwealth v. E-Z-
> Parks, Inc.,* 153 Pa. Commw. 258, 620 A.2d 712, 717 (Pa. Commw.
> 1993). It generally involves a situation where by virtue of the respective
> strength and weakness of the parties, one has the power to take
> advantage of or exercise undue influence over the other. *Estate of
> Evasew,* 526 Pa. 98, 584 A.2d 910, 913 (Pa. 1990). *Also see, e.g.,
> Maritrans G.P., Inc. v. Pepper, Hamilton & Scheetz,* 529 Pa. 241, 602
> A.2d 1277, 1283 (Pa. 1990 [1992]) (special relationship exists between
> attorney and client); *Frowen v. Blank,* 493 Pa. 137, 425 A.2d 412, 418
> (Pa. 1981) (special relationship exists between 86 year old widow with no
> formal education and her sole business counselor); *Estate of Thomas,* 463
> Pa. 284, 344 A.2d 834, 836 (Pa. 1975) (special relationship between
> attorney-scrivener and testator); *Silver v. Silver,* 421 Pa. 533, 219 A.2d
> 659, 662 (Pa. 1966) (special relationship between widow and sons upon
> whom she relied to manage her property); *Leedom v. Palmer,* 274 Pa. 22,
> 117 A. 410, 412 ([Pa.] 1922) (special relationship between guardian and
> ward).

*Etoll, Inc.*, 811 A.2d at 22-23.  That court framed the question of whether a claim of

fiduciary relationship was sufficiently independent of the contract in these terms:

> Rather, the critical question is whether the relationship goes beyond mere
> reliance on superior skill, and into a relationship characterized by
> "overmastering influence" on one side or "weakness, dependence, or trust,
> justifiably reposed" on the other side. *Basile v. H & R Block,* 777 A.2d 95,
> 101 (Pa.Super.2001). A confidential relationship is marked by such a

> disparity in position that the inferior party places complete trust in the superior party's advice and seeks no other counsel, so as to give rise to a potential abuse of power. *Id.* at 102. [footnote omitted].

*Id.* at 23.

In this case, Plaintiffs have alleged just that:   that defendants induced the Plaintiffs to place "their trust, confidence and dependence in the Demmes and MUS....that the Demmes and MUS were effectively co-venturers or joint venturers with Plaintiffs and that they could rely upon Steve Demme to keep their best interests paramount." (Complaint, ¶ 144).  As a result, "Plaintiffs allowed the Demmes and MUS to take undue control over their businesses, to dictate how they would conduct the business on a day-to-day basis, and to take information that was otherwise confidential." (Complaint ¶ 145).  Further, Lisa Angle "put her trust in Steve Demme and MUS in allowing them to publish her work, relying upon Steve Demme's representations that she would always be a Rep for MUS and that he would do nothing to her detriment."  (Complaint ¶ 146).   In violation of those duties, defendants "used the Plaintiffs' confidential information and trust in order to undermine their distributorships and take their business from them for the exclusive benefit of MUS and the Demmes." (Complaint ¶ 147).

Indeed, Pennsylvania law has recognized that joint venturers owe each other fiduciary duties.  *Snellbaker v. Herrmann*, 315 Pa. Super. 520, 462 A.2d 713, 718 (1983)("[A] joint venturer owes a duty of the utmost good faith and must act towards his associate with utmost honesty.")  In particular, the majority holder, or one in whom trust is placed, has a duty to protect the interests of the minority.  *Ferber v. American Lamp Corp.*, 503 Pa. 489, 469 A.2d 1046, 1050 (1983).  Here, Plaintiffs have alleged that,

apart from the contractual relationship that they had with defendants, there was a joint venture; as such, there were fiduciary duties that are not barred by the gist of the action doctrine, and this claim should not be dismissed on that basis.

## III.   THE COMPLAINT ALLEGES THE ELEMENTS OF A FIDUCIARY RELATIONSHIP.

Whether under Pennsylvania law or the law of the place of injury, the Plaintiffs have alleged the elements of a fiduciary relationship.  A fiduciary relationship, whether under Indiana, Idaho or Pennsylvania law, is a relationship in which one party places trust and confidence in another party such that there is "a disparity in the parties' position, giving rise to an abuse of power." *Burton v. Bojazi,* 2005 WL 1522040 at *3 (Pa. Com. Pl. 2005).   "A fiduciary relationship does not exist unless there is a relationship of trust and confidence between the parties."  *York v. Fredrick*, 947 N.E.2d 969, 978 (Ind. Ct. App. 2011 (citing *Geiger & Peters, Inc. v. Berghoff*, 854 N.E.2d 842, 852 (Ind. Ct. App. 2006)); *Pocatello Dental Group, P.C. v. Interdent Service Corp.,* 2005 WL 1041398 at *8 (D. Idaho 2005) (fiduciary duty exists under Idaho law where there is (1) vulnerability of one party to another (2) which results in the empowerment of the stronger party by the weaker, and (3) the empowerment has been accepted by the stronger party that (4) prevents the weaker from effectively protecting itself).

Pennsylvania has recognized that the existence of a fiduciary relationship depends upon the facts alleged, not upon the labels put on the relationship:

> The Supreme Court has determined that a confidential relationship and the resulting fiduciary duty may attach "wherever one occupies toward another such a position of advisor or counsellor as reasonably to inspire confidence that he will act in good faith for the other's interest." *Brooks v. Conston,* 356 Pa. 69, 51 A.2d 684, 688 (1947), *quoted in Biddle v. Johnsonbaugh,* 444 Pa.Super. 450, 664 A.2d 159, 162 (1995). "In some cases, as between trustee and cestui que trust, guardian and ward,

attorney and client, and principal and agent, the existence of a confidential relationship is a matter of law." *In re Estate of Mihm*, 345 Pa.Super. 1, 497 A.2d 612, 615 (1985). In other cases, where these relationships do not exist, confidential relations may still arise based on the facts and circumstances apparent on the record. *See id.* <u>Both our Supreme Court and other courts have recognized that those who purport to give advice in business may engender confidential relations if others, by virtue of their own weakness or inability, the advisor's pretense of expertise, or a combination of both, invest such a level of trust that they seek no other counsel.</u> *See Frowen*, 425 A.2d at 418; *Young*, 279 A.2d at 763; *Brooks*, 51 A.2d at 688. *See also Burdett v. Miller*, 957 F.2d 1375, 1381 (7th Cir.1992) (If a person solicits another to trust him in matters in which he represents himself to be expert as well as trustworthy and the other is not expert and accepts the offer and reposes complete trust in him, a fiduciary relation is established).

*Basile v. H & R Block, Inc.*, 777 A.2d 95, 101, 102 (Pa. Super. Ct. 2001). (Emphasis added).

While it is true that in the absence of other facts, a mere distribution relationship does not give rise to fiduciary duties, courts have recognized that where Plaintiffs allege facts that show undue dependence by the distributor upon the supplier, and the supplier's undue control over the distributor's operations, that a claim for breach of fiduciary duty will stand.  For example, in *Eulrich v. Snap-On Tools Corp.*, 121 Or. App. 25, 36, 853 P.2d 1350, 1358 (Or. App. 1993), *rev. denied*, 317 Or. 583, 859 P.2d 540 (Or. Sep. 21, 1993), *cert. granted, judgment vacated on other grounds*, 512 U.S. 1231 (1994), the Court held that the plaintiff dealer stated a claim for breach of fiduciary duty on facts showing a relationship of control and dependence similar to that alleged here (Complaint ¶¶ 38-39):

> This particular manufacturer-dealer relationship is not entirely typical of such relationships, however. If the parties construct an essentially fiduciary-type dependency relationship, duties will arise from that relationship. *See Strickland v. Arnold Thomas Seed*, 277 Or. 165, 170, 560 P.2d 597 (1977). We cannot say that there was no such relationship between the parties in this case. There was evidence that defendants

> encouraged plaintiff to enter a relationship of dependence and reliance
> beyond that contemplated in a typical dealership. There was ongoing,
> intensive supervision in which the field manager rode along with plaintiff
> and actually conducted sales on behalf of plaintiff. Plaintiff's supervisor did
> all of his paperwork for the first month, and continued to do some of that
> paperwork throughout plaintiff's tenure as a dealer. Snap-On provided
> plaintiff with extensive funding and financing and encouraged plaintiff to
> use Snap-On's credit extending program, even though it was often
> plaintiff's credit that was being extended.  [Footnote omitted]. There was
> also evidence that defendants promised to "take care of" their dealers and
> exercised complete control over how the business was run and over the
> size and location of the dealer's territory.

Similarly, New York courts have recognized that "a long-standing distributorship relationship in which the manufacturer dominated the distributor, and pursuant to which the distributor was contractually required to disclose proprietary information regarding its customers to the manufacturer, creates a duty on the part of the manufacturer not to use that information to the detriment of the distributor." *Abernathy-Thomas Eng. Co. v. Pall Corp.*, 103 F. Supp. 2d 582, 602 (E.D.N.Y. 2000).  *See also A.S. Rampell v. Hyster Co.*, 3 N.Y. 369, 165 N.Y.S.2d 475, 144 N.E.2d 371 (1957).   Similarly, in *E&J Gallo Winery v. Morand Bros. Beverage Co.*, 247 F. Supp. 2d 979, 985 (N.D. Ill. 2003), the court held that a wine distributor had stated a claim for breach of fiduciary duty against its supplier where it alleged that it did not have a typical "arms-length" relationship, the wine maker exercised domination and control over the distributor, who placed trust in it "to not take advantage…and to allow [the distributor] a reasonable return" all of which was "reinforced by the unusually close family bond" between the supplier's and distributor's families.

The complaint adequately states the elements of dependency, domination and trust that characterize a fiduciary relationship, and that count should not be dismissed.

IV.   **COUNTS VII AND VIII, UNDER THE IDAHO AND TENNESSEE STATUTES, SHOULD NOT BE DISMISSED**

Defendants' contention that Plaintiffs have failed to state a claim under the Idaho Consumer Protection Act because they have not alleged a purchase of goods or services ignores the broad construction of the act and the express terms of the complaint.  "Goods" encompass any tangible property, including money, and any "thing of value wherever situate, including certificates or coupons exchangeable for such goods."  Idaho Code § 48-602(6); *Idaho First Nat. Bank v. Wells*, 100 Idaho 256, 596 P.2d 429 (1979).  "Services" include "work, labor or any other act or practice provided or performed by a seller to or on behalf of a consumer."  Idaho Code § 48-602(7).    The ICPA prohibits engaging in any act or practice which is misleading, false or deceptive.  Idaho Code § 48-603(17).  Further, the purpose of the Act "is to protect both consumers and businesses against unfair methods of competition and unfair or deceptive acts and practices in the conduct of trade or commerce. . . .  It is the intention of the legislature that this chapter be remedial and be so construed."  Idaho Code § 48-601.  To this end, the statute declares that it is the intent of the legislature "that in construing this act due consideration and great weight shall be given to the interpretation of the federal trade commission and the federal courts relating to section 5(a)(1) of the federal trade commission act...."  Idaho Code § 48-604.   The Federal Trade Commission, in turn, has issued a Trade Regulation Rule governing the manner in which franchises can be sold.  16 C.F.R. Part 436.

The complaint specifically alleges losses from the purchase by the Angles of "goods" and "services."  Specifically, it alleges that Defendants sold Plaintiffs a franchise without complying with the FTC Rule; that MUS made false representations in order to

take over plaintiffs' businesses; that it wrongfully terminated their distributorships; that it wrongfully made them return comb-bound books that they had purchased and then unfairly competed with them; and wrongfully copied and profited from Lisa Angle's intellectual property.  Complaint, ¶ 157.  These allegations clearly allege that Plaintiffs were injured as a result of their purchase of goods and services, and this count of the complaint should not be dismissed.

The Tennessee Consumer Protection Act likewise prohibits a broad range of unfair and deceptive conduct, including the sale of a franchise or distributorship without proper disclosure or upon false pretenses.  Tennessee courts have specifically held that failures to disclose in connection with the sale of a franchise are violations of the TCPA. *Akers v. Bonifasi*, 629 F. Supp. 1212 (M.D. Tenn. 1985).  That court declared that "the established policies of the state of Tennessee include its legislative efforts to protect legitimate business-enterprises from those who engage in unfair or deceptive acts or practices in the conduct of trade or commerce in part or wholly within Tennessee ...." The Complaint more than adequately alleges that Defendants engaged in unfair and deceptive acts and practices. Complaint, ¶ 161.  The court should not dismiss this claim.

## Conclusion

For all of the reasons set forth above, Defendants' motion should be denied.

Dated:  August 16, 2012                    Respectfully submitted,

                                           W. MICHAEL GARNER, P.A.

                                           By:   /s/ W. Michael Garner
                                           W. Michael Garner, #274914
                                           222 South 9th Street, Suite 2930
                                           Minneapolis, MN  55402
                                           Telephone:  612-259-4800
                                           Facsimile:  612-259-4810
                                           wmgarner@franchisedealerlaw.com

                                           AND

                                           SOPKO, NUSSBAUM, INABNIT & KACZMAREK
                                           Brent E. Inabnit, #17387-71
                                           Joshua A. Visser, #25144-64
                                           5th Floor – Plaza Building
                                           210 South Michigan Street, P.O. Box 300
                                           South Bend, IN  46624
                                           Telephone:  574-234-3000
                                           Facsimile: 574-234-4220
                                           brenti@sni-law.com
                                           joshv@sni-law.com

                                           **ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing document upon the following via CM/ECF:

D Michael Anderson
mike.anderson@btlaw.com

Eric Robley Thomason
eric.thomason@btlaw.com

Brandon S Harter PHV
brandonh@hublaw.com

Kevin M French PHV
kevinf@hublaw.com


Dated:  August 16, 2012                   W. MICHAEL GARNER, P.A.

                                          By:   /s/ W. Michael Garner
                                          W. Michael Garner
                                          222 South 9th Street, Suite 2930
                                          Minneapolis, MN  55402
                                          Telephone:  612-259-4800
                                          Facsimile:  612-259-4810
                                          wmgarner@franchisedealerlaw.com

                                          **ATTORNEYS FOR PLAINTIFFS**