UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| SUSAN LYNCH, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | CAUSE NO. 3:11-cv-233-JD |
| ) | |
| MATH-U-SEE, INC., *et al.*, ) | |
| ) | |
| Defendants. ) | |

**REPORT AND RECOMMENDATION**

On July 30, 2012, Defendants, Math-U-See, Inc. ("MUS"), Steven Demme ("Demme"), and Ethan Demme, filed a motion to dismiss in part Plaintiffs' second amended complaint. On August 16, 2012, Plaintiffs, Susan Lynch ("Lynch"), Math-U-See Indiana, Inc., Lisa Angle and Jim Angle (collectively "the Angles"), filed a response. On August 27, 2012, Defendants filed a reply. On September 6, 2012, the motion to dismiss was referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the following reasons, the undersigned **RECOMMENDS** that Defendants' motion to dismiss be **GRANTED IN PART AND DENIED IN PART.**

**I.    RELEVANT BACKGROUND**

On July 9, 2012, Plaintiffs filed their second amended complaint against Defendants alleging breach of contract, breach of the duty of good faith, breach of fiduciary duty, violation of the Indiana Franchise Act, violation of Idaho's and Tennessee's consumer protection laws, tortious interference with contract, tortious interference with prospective business relationships,

Copyright infringement, quantum meruit, unjust enrichment, and breach of implied license.[1]
According to the second amended complaint, Plaintiffs were distributors of a line of home-schooling curricula entitled "Math-U-See," which was primarily authored by Demme. Doc. No. 48 at ¶¶ 1–2. Demme developed the MUS program almost twenty years ago for teaching mathematics to home-schooled children. *Id.* at ¶ 2. Demme recruited Plaintiffs as sales representatives to market the MUS products nationwide. *Id.* Demme entered into a contract with Plaintiffs that was "renewable each year so long as the distributors performed the contract." *Id.* at ¶ 3. Demme repeatedly assured Plaintiffs that he was "committed to keeping them as distributors." *Id.* at ¶ 4. Plaintiffs invested significant resources into selling MUS products. *Id.*

Plaintiffs allege that Demme created a fiduciary duty to them through oral promises, separate from the written contract, in which he asserted his Christian values and their dominant influence on his working relationship with Plaintiffs as MUS representatives doing God's work through MUS. *Id.* at ¶ 5. Plaintiffs further allege that Demme and MUS engendered Plaintiffs' trust and confidence by his continual reassurances that he would act in their best interests and would not do anything against their interests. *Id.* Plaintiffs assert that those reassurances caused them to put their future and that of their families into the hands of Demme and MUS. *Id.* Specifically, they claim to have given "MUS and the Demmes confidential information that they otherwise would not have given . . . including information that would assist and enable [Demme] later to wrongfully take over their businesses." *Id.* Plaintiffs also allege that Lisa Angle relied on her trust in Demme, who engendered her belief that she would be an MUS representative for

---

[1] In his referral order, the District Judge noted the parties' agreement that the second amended complaint is the superseding and operative complaint to which the instant motion to dismiss in part is directed. Therefore this report and recommendation does not reference the previous versions of the complaint or the previous motion to dismiss.

life, when she developed additional curriculum for MUS. *Id.* at ¶ 6.

According to the complaint, MUS was able to sell "hundreds of thousands of dollars of Math-U-See materials a year . . . ." *Id.* at ¶ 7. However, in late 2009 and early 2010, Demme, aided by his son, Ethan, ended his contract with Plaintiffs and MUS took on distribution responsibilities. *Id.* at ¶ 8. Initially, Demme said that MUS would simply assume control of shipping materials to customers, leaving the Plaintiffs to develop their markets and become more profitable. *Id.* A couple months later, Demme stated that Plaintiffs would need to become employees and that he would get the Plaintiffs compensation and positions with MUS. *Id.* Two months later, in April 2010, Demme announced that it was necessary to end MUS's contract with the Plaintiffs in order to comply with certain credit card regulations. *Id.*

Plaintiffs allege that by June 2010, MUS stopped shipping MUS materials to Plaintiffs, redirected the MUS telephone number so Plaintiffs could no longer receive customer calls, redirected customer emails, demanded that Plaintiffs return sales aids, customer lists, and databases, and changed the company website so that orders went directly to MUS rather than to Plaintiffs. *Id.* at ¶ 9. Demme offered customer service jobs to some Plaintiffs, but only offered to pay them $20 per hour. *Id.* at ¶ 10. When Plaintiffs cited the contract that Demme offered, he stated that there never was a contract, that the contracts had been abandoned, and that he owed Plaintiffs nothing. *Id.*

Plaintiffs seek to recover the value of their lost distributorships. In addition, Lisa Angle seeks damages and injunctive relief to prevent MUS from using the additional materials she created. *Id.* at ¶ 11.

**II.     ANALYSIS**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants now seek dismissal of six of the claims in Plaintiffs' second amended complaint. Under Fed. R. Civ. P. 12(b)(6), dismissal of a complaint is appropriate when the complaint fails to allege a cause of action for which relief can be granted. Federal law only requires a plaintiff to provide a short and plain statement of the claim that the pleader is entitled to relief. Fed. R. Civ. P. 8; *see Bartholet v. Resihauer A.G. (Zurich)*, 953 F.2d 1073, 1078 (7th Cir. 1992). When considering a 12(b)(6) motion to dismiss, the court should "construe the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in her favor." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). A complaint that states a plausible claim for relief survives a motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (holding that the pleading stage does not impose a probability requirement but does require alleged facts to be plausible so as to entitle a person to relief even if recovery is remote and unlikely).

In this case, Defendants argue that Pennsylvania law applies to all twenty counts included in the second amended complaint based on a choice of law provision favoring Pennsylvania law in the parties' written Distributorship Agreements ("the Contracts"). Alternatively, Defendants contend that Indiana choice of law analysis also leads to application of Pennsylvania law. Defendants assert that under Pennsylvania law, Counts V (breach of fiduciary duty), IX (tortious interference with contract), and X (tortious interference with prospective business relations) should be dismissed because they improperly re-cast breach of contract claims as tort claims. In addition, Defendants claim that Count V should be dismissed for failure to allege the basis of a fiduciary duty. Defendants also assert that Pennsylvania law precludes further litigation of

Counts VI, VII, and VIII, raised under the Indiana Franchise Act, Idaho Consumer Protection Act, and Tennessee Consumer Protection Act respectively. However, Defendants claim that even if Pennsylvania law does not govern Counts VII and VIII, they should be dismissed because they fail to allege a private right of action under the Idaho and Tennessee consumer protection laws that they invoke.

### A. Choice of Law Analysis

"When a federal court sits in diversity, it generally applies the choice-of-law rules of the state in which it sits." *In re Jafari*, 569 F.3d 644, 648 (7th Cir. 2009) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487 (1941)). Therefore, this Court will apply Indiana's choice of law rules to determine the law applicable to Counts V–X.

#### 1. Contractual choice of law provision

Indiana choice of law doctrine recognizes and favors contractual provisions identifying the law governing the agreement and the relationship between the parties. *Wright-Moore Corp. v. Ricoh Corp.*, 908 F.2d 128, 132 (7th Cir. 1990); *Allen v. Great Am. Reserve Ins. Co.*, 766 N.E.2d 1157, 1162 (Ind. 2002) (citations omitted). However, "[f]orum selection clauses only govern claims that fall within the scope of the clause." *Jallali v. Nat'l Bd. of Osteopathic Med. Examiners, Inc.*, 908 N.E.2d 1168, 1174 (Ind. Ct. App. 2009). In this case, the parties' contracts, in the form of the Contracts, include a clause that states: "This Agreement shall be construed in all aspects in accordance with and shall be governed by the laws of the State of Pennsylvania." Doc. No. 1-1 at ¶ 7. While the parties agree that Pennsylvania law should be applied when interpreting the terms of the contract, they differ in their views of the "shall be governed by" phrase. Defendants argue that the phrase is superfluous if it does not determine the governing

5

law for all aspects of the parties' business relationship, including tort and statutory claims. Plaintiffs, on the other hand, contend that the phrase limits the application of Pennsylvania law to claims based on the contract.

Other states have construed similar choice of law provisions to cover only claims based on the contract. A federal court in Pennsylvania reviewed a provision that read, "This Agreement shall be governed by the laws of the State of Delaware." *Coram Healthcare Corp. v. Aetna U.S. Healthcare, Inc.*, 94 F. Supp. 2d 589, 593 (E.D. Pa. 1999). The Court did not apply the contractual choice of law provision to the tort claim included in the action. *Id.* Instead, it determined the applicable law for the tort claim through the forum state's choice of laws analysis. *Id.* Similarly, an Illinois federal court found a contractual provision indicating that the agreement was "governed by" Georgia law to apply only to claims based on the contract itself. *Chicago Printing Co. v. Heidelberg USA, Inc.*, 01 C 3251, 2001 WL 1134862 (N.D. Ill. Sept. 25, 2001). Here, the language of the parties' contractual choice of law provision does not suggest that Pennsylvania law applies to anything besides the contract itself. There is no language broadening the scope of the clause to the entire relationship between the parties or any claims arising independently of the contract. Therefore, the choice of laws provision in the parties' contracts does not apply to Plaintiffs' tort and statutory claims. Each of Plaintiffs' non-contractual claims must be evaluated under Indiana choice of law rules to determine which laws will apply.

### 2. Plaintiffs' tort claims (Counts V, IX, and X)

In tort actions where the duty sought to be enforced arises from a contract with a forum selection clause, the clause will govern the action. *See Hugel v. Corp. of Lloyd's*, 999 F.2d 206,

209 (7th Cir. 1993). In Indiana, if the duty arises independently from the contract and the difference between the laws of the states could affect the outcome of the litigation, the traditional *lex loci delicti* rule is presumed to apply. *Simon v. United States*, 805 N.E.2d 798, 805 (Ind. 2004). This rule requires the court to apply the law of "the state where the last event necessary to make the actor liable for the alleged wrong takes place," or the law of the place of the tort. *Id.* (citing *Hubbard Mfg. Co. v. Greeson*, 515 N.E.2d 1071, 1073 (Ind. 1987). *Lex loci* only applies, however, if the place of the tort is significantly connected to the action being litigated. *Id.* Most of the time, the laws of the location of the "last event" apply. *Judge v. Pilot Oil Corp.*, 205 F.3d 335, 336–37 (7th Cir. 2000). In rare instances, the place of the tort is sufficiently insignificant to warrant further analysis. *Patel, et al. v. Chriscoe and C&T Durham Trucking Co., Inc.*, No. 1:11-cv-00162-TWP-TAB, 2011 WL 2671221, at *2 (S.D. Ind. July 7, 2011). In those instances, other relevant factors, including the place of the conduct causing the injury, "the residence or place of business of the parties[,] and the place where the relationship is centered," can be considered. *Simon*, 805 N.E.2d at 806 (citing *Hubbard*, 515 N.Ed2d at 1074).

The *lex loci* analysis leads to an untenable result in this case. In Counts V, IX, and X, Plaintiffs allege that the "last event" was their damages. Any damages incurred by Plaintiffs occurred in Indiana, Idaho, and Oregon where they reside. Defendants, however, allege that the "last event" would be the Defendants' alleged misconduct constituting the alleged breach, which occurred in Pennsylvania. Because Defendants could have breached their duties to Plaintiffs without Plaintiffs suffering any injury or damages, the "last event" logically occurred in the states where the Plaintiffs reside and suffered their damages. However, with the "last event" occurring in three different states, acceptance of the *lex loci* presumption would force the Court

7

to apply the laws of all three states to each Count. Such an approach could generate inconsistent results.

To avoid inequities and inconsistencies in judicial results, Indiana choice of law rules preclude *dépeçage* or the "process of analyzing different issues within the same case separately under the laws of different states." *Id.* at 801–03. This also promotes the enforcement of each legislature's statutory intentions and each jurisdiction's common law. *Id.* Therefore, only one law may be applied to Count V, to Count IX, and to Count X. Because the locations of the Plaintiffs' injuries cannot determine which law applies to each of these claims, consideration of the *Hubbard* factors is needed.

In all three Counts, the alleged misconduct causing Plaintiffs' injuries and damages occurred in Pennsylvania where Defendants resided and conducted their business. In addition, Pennsylvania is the only state that connects all the parties because all the Plaintiffs maintained relationships with Defendants there. The states of residence and business locations of Plaintiffs are irrelevant given the *dépeçage* analysis discussed above. Therefore, the jurisdiction with the greatest connection between the torts alleged and this action as a whole is Pennsylvania. As a result, Indiana's choice of law rules dictate that Pennsylvania law governs Counts V, IX, and X.

### 3. Plaintiff's Statutory Claims (Counts VI, VII, and VIII)

"Indiana law . . . permits state public policy to override the contractual choice of law only if the state has a materially greater interest in the litigation than the contractually chosen state." *Wright-Moore Corp. v. Ricoh Corp.*, 908 F.2d 128, 132-33 (7th Cir. 1990). The court in *Wright-Moore*, however, was reviewing a contractual provision different from the provision at issue in this case. In *Wright-Moore*, a franchisee pleaded claims under the Indiana Franchise Act

8

despite a clause in its contract stating that New York law would govern any disputes. *Id.* at 130. As discussed above, the choice of law provision at issue in this case was not as broad as the *Wright-Moore* clause and only applied only to the contract itself. Therefore, Plaintiffs' statutory claims are not contrary to the contractual provision that the parties embraced in their Contracts. Counts VI, VII, and VII cannot be dismissed as Defendant suggests simply because they were raised under the laws of states other than Pennsylvania. Each count can only be dismissed if the alleged facts do not support a claim under each statute. *See Allen v. Great Am. Reserve Ins. Co.*, 766 N.E.2d 1157, 1166 (Ind. 2002).

Moreover, the states of Indiana, Idaho, and Tennessee all have a materially greater interest in the litigation of Counts VI, VII, and VII than Pennsylvania does. While it is true that Pennsylvania is the only state common to all parties, that distinction does not carry as much weight in these claims because they are not being raised by all Plaintiffs. Only Indiana resident Lynch and Indiana corporation MUS Indiana allege violation of the Indiana Franchise Act in Count VI. Only Lisa and Jim Angle, who were residents of Idaho when the original complaint was filed in this action, allege violation of the Idaho Consumer Protection Act in Count VII. And only Lisa and Jim Angle, who were residents of Tennessee when they built up their MUS business there, established a MUS shipping centers there, and operated it there until the termination of their distributorships, allege violation of the Tennessee Consumer Protection Act.[2]

All three statutes espouse public policies favoring protection of the residents of their respective states. Plaintiffs in these Counts all conducted business in the states of their

---

[2]The Angles, like all MUS distributors, were not limited to working in designated geographic areas. The Angles conducted their business in multiple states and in overseas markets. They moved to Tennessee from Montana to develop the Tennessee and Alabama markets and to establish the shipping center. They later moved to Idaho but continued operating their business in multiple states, including the Tennessee shipping center.

9

residence. As a result, documents and witnesses are located in those states. The Contracts were partially performed in those states. Defendants often visited Plaintiffs in their home states to support their businesses. And most important, Plaintiffs all suffered their injuries in those states. Therefore, Pennsylvania law does not apply to Counts VI, VII, and VIII. Because Defendants do not seek to dismiss Count VI under an alternate theory, the undersigned **RECOMMENDS** that the Court **DENY** Defendant's motion to dismiss Count VI. [Doc. No. 51].

      **B.**      **Analysis of Tort and Statutory Claims under the Proper State Laws**

In the instant motion, Defendants sought dismissal of six counts based on contractual choice of law provision included in the parties' contracts. Having found that Pennsylvania law applies to Counts V, IX, and X, Plaintiffs' joint tort claims, the Court will address Defendants' argument that all three counts should be dismissed because Pennsylvania's "gist of the action" doctrine prevents plaintiffs from recasting breach of contract claims as tort claims. In addition, the Court will address Defendants' argument that Counts VII and VIII, the remaining statutory claims under the Idaho and Tennessee Consumer Protection Acts respectively, should be dismissed for failure to state a claim upon which relief can be granted.

      **1.**      **Tort Claims**

Pennsylvania's "gist of the action" doctrine precludes plaintiffs from re-casting ordinary breach of contract actions into tort actions. *See Hart v. Arnold*, 884 A.2d 316, 339–40 (Pa. Super. Ct. 2005). Contract actions stem from the breach of duties imposed by mutual consent of the parties to the contract while tort actions stems from the breach of duties imposed as a matter of social policy. *eToll, Inc. v. Elias/Savion Adver., Inc.*, 811 A.2d 10, 14 (Pa. Super. Ct. 2002). When parties define their obligations to each other through a contract, claims should be limited

to the terms of the contract without invoking "the larger social policies embodied by the law of torts." *Id*. Courts should be careful, however, not to dismiss a tort claim prematurely under the guise of the "gist of the action" doctrine because Fed. R. Civ. P. 8(d)(2) allows plaintiffs to plead alternate theories of liability. *PPG Indus., Inc. v. Generon IGS, Inc.*, 760 F. Supp. 2d 520, 528 (W.D. Pa. 2011).

To determine if the "gist of the action" doctrine applies to Plaintiffs' tort claims, the Court must first determine if the duty allegedly breached by Defendants in each count originated in the Contracts. In other words, the "gist of the action" doctrine can only bar Plaintiffs' claims if they are dependent on the accompanying contract claim. *See Alpart v. Gen. Land Partners, Inc.*, 574 F. Supp. 2d 491, 505 (E.D. Pa. 2008). Courts are reluctant, however, to dismiss tort claims based on the "gist of the action" doctrine without a factually intensive inquiry. *See Charleswell v. Chase Manhattan Bank, N.A.*, 308 F. Supp. 2d 545, 567 (D.V.I. 2004); *CH & H Pa. Props., Inc. v. Heffernan*, No. CIV.A. 03-CV-2349, 2003 WL 22006799, at *6 n. 6 (E.D. Pa. Aug. 20, 2003).

Similarly, the undersigned refuses to recommend that the Court dismiss Plaintiffs' tort claims based on the "gist of the action" doctrine. Through discovery, Plaintiffs could establish facts supporting a claim for an independent origin of the duties related to each tort. Defendants' may choose to raise the "gist of the action" doctrine in dispositive motions or at trial. It is premature to dismiss these claims, however, before discovery. After all, the Federal Rules of Civil Procedure intentionally require notice pleading, which promotes pleading of alternative theories of liability and the use of discovery. Therefore, because Defendants' motion to dismiss Count IX (tortious interference with contract) and Count X (tortious interference with

11

prospective business relations) are premature, the undersigned **RECOMMENDS** that the Court **DENY** Defendants' motion to dismiss Counts IX and X. [Doc. No. 51].

Defendants' motion to dismiss Count V (breach of fiduciary duty or special relationship) under the "gist of the action" doctrine is similarly premature. However, Defendants have also challenged the sufficiency of Plaintiffs' pleadings in Count V under Fed. R. Civ. P. 12(b)(6).

Under Pennsylvania law, a fiduciary duty is created only when there is a confidential relationship between parties. *See Burton v. Bojazi*, 2005 WL 1522040 at *3 (Pa. Com. Pl., June 17, 2005). A confidential relationship exists where the parties do not deal on equal terms, "but, on the one side there is an overmastering influence, or on the other, weakness, dependence, or trust, justifiably reposed." *Id.* (citing *Basile v. H&R Block, Inc.*, 777 A.2d 95, 101 (Pa. Super. Ct. 2001). Such confidential relationships are acknowledged in relationships between guardians and wards, attorneys and clients, and principals and agents. *Basile*, 777 A.2d at 102. However, confidential relationships and the fiduciary duty that accompanies the relationship may arise in other types of relationships depending on the facts in the record. *Id.* For instance, "those who purport to give advice in business may engender confidential relations if others, by virtue of their own weakness or inability, the advisor's pretense of expertise, or a combination of both, invest such a level of trust that they seek no other counsel." *Id.* Therefore, when someone's conduct reasonably inspires confidence in another that he will "act in good faith for the other's interest," a confidential relationship may exist and a fiduciary duty may attach. *Id.*

Plaintiffs allege just such a confidential relationship. They contend that Demme's personal conversations about the role of his Christian values in the business, his personal assurances that he would always act in their best interests and would not do anything against

12

their interests, and his oral promise that they would be MUS representatives "for life" inspired such trust and confidence in the Plaintiffs. Plaintiffs allege that the confidential relationship caused them to turn over assorted business information they would not have otherwise. Plaintiffs further argue that Defendants used that information to support the termination of the Contracts. While the decision as to whether a fiduciary relationship existed cannot be decided in response to a motion to dismiss, Plaintiffs have pleaded sufficient facts to plausibly result in recovery. Therefore, the undersigned **RECOMMENDS** that Defendants' motion to dismiss Count V for failure to state a claim should be **DENIED**. [Doc. No. 51].

### 2. Statutory Claims

#### a. Count VII—Idaho Consumer Protection Act

Defendants seek dismissal of Plaintiffs, Lisa and Jim Angle's, Idaho Consumer Protection Act ("ICPA") claim arguing that the Angles have no private cause of action upon which to base their claim. Idaho Code § 48-608 establishes a private right of action for "[a]ny person who purchases or leases goods or services and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by this chapter . . . ." Idaho Code § 48-603 describes nineteen separate acts that are unfair methods and practices that are actionable. The Angles do allege some acts arguably included in section 48-603, including a violation of disclosure requirements found in 16 C.F.R. Part 436 governing franchises and incorporated into the Idaho statute at Idaho Code § 68-604. Defendants contend, however, that the alleged acts did not stem from the Angles' purchases of MUS materials during the course of their business relationship. They conclude that the Angles, therefore, lack a private a cause of action under the statute and

13

Count VII should be dismissed.

The Angles assert that they do have a private cause of action because their injuries allegedly arose from Defendants' sale of a franchise to them. The Angles rely heavily on the ICPA's broad purpose "to protect both consumers and businesses against unfair methods of competition and unfair or deceptive acts and practices in the conduct of trade or commerce . . ." to support their argument. Idaho Code § 68-401. Moreover, the Angles contend that the incorporation of FTC statutes into the ICPA extends protection to franchises like theirs, established with Defendants through the Contract.

Further development of the record through discovery may shed additional light on this issue. But having reviewed the parties' arguments and the applicable Idaho statutes, the Court is persuaded by the Angles' arguments and finds that the Angles pleaded sufficient facts to support a private cause of action under the Idaho Act. Consequently, the undersigned **RECOMMENDS** that the Court **DENY** Defendants' motion to dismiss Count VII. [Doc. No. 51].

### b.     Count VIII—Tennessee Consumer Protection Act

In both the Idaho and Tennessee statutory claims, the Angles allege identical facts to support their contention that Defendants engaged in unfair and deceptive acts and practices in violation of both states' consumer protection acts. Defendants similarly seek dismissal of the Angles' Tennessee Consumer Protection Act ("TCPA") claim for lack of a private cause of action. Specifically, they argue that the statutory provision that the Angles presumably rely upon limits enforcement actions to the Tennessee Attorney General. The Court agrees.

The TCPA provides that:

> [a]ny person who suffers an ascertainable loss of money or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever

> situated, as a result of the use or employment by another person of an unfair or deceptive act or practice described in § 47-18-104(b) and declared to be unlawful by this part, may bring an action individually to recover actual damages.

Tenn. Code Ann. § 47-18-109(a)(1). There are fifty-one unfair or deceptive acts or practices described in § 47-18-104(b). However, the catch-all provision in the TCPA limits enforcement to the Tennessee Attorney General. The provision states that "[e]ngaging in any other act or practice which is deceptive to the consumer or to any other person; provided, however, that enforcement of this subdivision (b)(27) is vested exclusively in the office of the attorney general and reporter and the director of the division." *Id.* at § 47-18-104(b)(27). Thus the TCPA creates a private cause of action for any person engaging in any of the conduct specifically delineated in the section, except section (b)(27).

The question at hand, therefore, is whether the Angles brought their claim under § 47-18-104(b)(27) or some other section of the TCPA. Their complaint only cites to § 47-18-101, the short title section of the TCPA. *See* Doc. No. 48 at ¶ 161. In Count VII, however, the Angles invoked Idaho Code § 48-603(17), the catch-all provision in the ICPA with wording similar to that in Tenn. Code Ann. § 47-18-104(b)(27). In light of the Angles' pleading identical misconduct under the TCPA in Count VIII with no citation, the Court can only assume that they are invoking the Tennessee catch-all provision at section (b)(27). Because section (b)(27) precludes a private cause of action, the undersigned **RECOMMENDS** that Defendants' motion to dismiss Count VIII of Plaintiffs' second amended complaint should be **GRANTED IN PART**. [Doc. No. 51]. Count VIII of Plaintiffs' second amended complaint should be **DISMISSED**.

III.  CONCLUSION

For the reasons presented above, the undersigned **RECOMMENDS** that the Court **GRANT IN PART** Defendants' motion to dismiss with respect to Counts VIII under the Tennessee Consumer Protection Act. The undersigned also **RECOMMENDS** that the Court **DENY IN PART** Defendants' motion to dismiss with respect to Counts V (breach of fiduciary duty), VI (violation of Indiana Franchise Act), VII (violation of Idaho Consumer Protection Act), IX (tortious interference with contract), and X (tortious interference with business relations).

**NOTICE IS HEREBY GIVEN that within fourteen (14) days after being served with a copy of this recommended disposition a party may serve and file specific, written objections to the proposed findings and/or recommendations. Fed. R. Civ. P. 72(b). FAILURE TO FILE OBJECTIONS WITHIN THE SPECIFIED TIME WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER**.

**SO ORDERED.**

Dated this 27th day of December, 2012.

    s/Christopher A Nuechterlein
Christopher A. Nuechterlein
United States Magistrate Judge