UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| SUSAN LYNCH, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) CAUSE NO. 3:11-CV-233 JD |
| | ) |
| MATH-U-SEE, INC., *et al.*, | ) |
| | ) |
| Defendants. | ) |

**OPINION and ORDER**

This matter comes before the Court on a report and recommendation [DE 61] from Magistrate Judge Christopher A. Nuechterlein. As detailed below, the Court hereby adopts the report and recommendation in part and rejects it in part.

**I. BACKGROUND**

The operative complaint in this matter was filed on July 9, 2012 [DE 48][1]. Therein, Plaintiffs Susan Lynch, Math-U-See Indiana, Inc., Lisa Angle, Jim Angle, Paula Holmes, and Math-U-See Oregon, Inc. (Plaintiffs) alleged twenty claims against Defendants Math-U-See, Inc., Steven Demme, and Ethan Demme (Defendants) that center around the termination of Distributor Agreements that the parties entered into for the purpose of selling Defendants' Math-U-See, Inc. products which assisted with the teaching of mathematics to home schooled elementary and high school aged students. Defendants moved for dismissal of counts five through ten [DE 51, 52],

---

[1]After Plaintiffs filed the initial complaint [DE 1], they twice amended it [DE 44, 48]. The initial complaint [DE 1] and the first amended complaint [DE 44] have identical exhibits attached to them; however, the second amended complaint referred to these same exhibits but omitted any attachments [DE 48]. As such, the Court refers to the exhibits attached to the initial complaint [DE 1], and would request that Plaintiffs rectify the omission.

1

claiming that counts six through eight are improper claims brought pursuant to state law other than Pennsylvania, when the Distributor Agreement indicates that the business relationship was to "be governed by the laws of the State of Pennsylvania" [DE 1-1 ¶ 7]; counts five, nine, and ten are improper attempts to re-cast breach of contract claims as tort claims; and counts five, seven, and eight fail to state a claim upon which relief can be granted. Plaintiffs responded [DE 56] and Defendants replied [DE 57]. After referral of the matter, the magistrate judge issued a report in which he recommended that the district court grant Defendants' motion to dismiss with respect to count eight (violation of the Tennessee Consumer Protection Act), and deny Defendants' motion to dismiss with respect to counts five (breach of fiduciary duty), six (violation of Indiana Franchise Act), seven (violation of Idaho Consumer Protection Act), nine (tortious interference with contract), and ten (tortious interference with business relations) [DE 61]. Specifically, the magistrate judge indicated the following:

(1) counts six through eight, although brought pursuant to state statutes other than Pennsylvania, should not be dismissed on this ground because the Distributor Agreement and its Pennsylvania choice of law provision do not apply to statutory (i.e. non-contract) claims—a recommendation to which no party objects;

(2) Indiana's choice of law rules dictate that Pennsylvania law governs the tort claims alleged in counts five, nine, and ten—a recommendation to which no party objects;

(3) relative to counts five, nine, and ten, Pennsylvania's "gist of the action" doctrine does not preclude Plaintiffs from asserting these claims in the alternative to their breach of contract claims—a recommendation to which Defendants object;

(4) count five should not be dismissed for failure to state a claim because Plaintiffs

2

sufficiently allege breach of fiduciary duty—a recommendation to which Defendants object;

(5) count seven should not be dismissed for failure to state a claim because the Idaho Consumer Protection Act allows for a private right of action which was sufficiently alleged—a recommendation to which Defendants object; and

(6) count eight should be dismissed because the relevant subsection of the Tennessee Consumer Protection Act does not create a private cause of action—a recommendation to which no party objects. *Id*.

Defendants' three objections (as identified above) were filed on January 10, 2013 [DE 62], and Plaintiffs' response was filed on January 24, 2013 [DE 63]. The matter is ripe for ruling.

## II. DISCUSSION

The district court has discretion to accept, reject, modify, in whole or in part, the findings or recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1). Under Federal Rule of Civil Procedure 72(b)(3), the district court must undertake a *de novo* review "only of those portions of the magistrate judge's disposition to which specific written objection is made." *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999); *Goffman v. Gross*, 59 F.3d 668, 671 (7th Cir. 1995). If no objection or only a partial objection is made, the court reviews those unobjected portions for clear error. *Johnson*, 170 F.3d at 739. Under the clear error standard, the court can only overturn a magistrate judge's ruling if the court is left with "the definite and firm conviction that a mistake has been made." *Weeks v. Samsung Heavy Indus. Co., Ltd.*, 126 F.3d 926, 943 (7th Cir. 1997).

Here, the magistrate judge provided an appropriate factual background [DE 61 at 1-3] and employed the proper standard of review for a motion to dismiss under Rule 12(b)(6) [DE 61 at 4]. The Court finds no clear error in the portions of the magistrate judge's decision that remained

3

uncontested, except as to the magistrate judge's finding that count eight should be dismissed because the Tennessee Consumer Protection Act does not create a private cause of action. The Court further finds, after conducting a *de novo* review of the contested portions of the report and recommendation, that the magistrate judge's conclusions were proper. Accordingly, the Court now denies Defendants' motion to dismiss for the reasons that follow.

**A.      Unopposed findings of the report and recommendation.**

1.   It is recommended that the Distributor Agreement and its Pennsylvania choice of law provision do not apply to statutory claims asserted in counts six, seven, and eight.

The year long Distributor Agreement (which remained identical since its implementation in 1996) indicates that "[t]his agreement shall be construed in all aspects in accordance with and shall be governed by the laws of the State of Pennsylvania" [DE 1-1, ¶ 7]. The magistrate judge rejected Defendants' argument that the phrase "shall be governed by" determines the governing law for all aspects of the parties' business relationship, and instead agreed with Plaintiffs that the phrase limits the application of Pennsylvania law to claims based specifically on the Distributor Agreement [DE 61 at 6]. As a result, the magistrate judge rejected the Defendants' argument that all claims not based on Pennsylvania law, including Plaintiffs' statutory claims and tort claims, should be dismissed.

No party objected to this conclusion, and the undersigned adopts the report and recommendation in this respect. *See e.g., Coram Healthcare Corp. v. Aetna U.S. Healthcare, Inc.*, 94 F. Supp. 2d 589, 593 (E.D. Pa. 1999) (refusing to apply the contractual choice of law provision to the tort claim included in the action, and instead employing the forum state's choice of law analysis to determine the law that applied to the tort claim); *Estate of Knox v. Wheeler,* No. 2:05-CV-19-PRC, 2005 WL 2043787, 7  (N.D. Ind. Aug. 25, 2005) (in a case where the contract stated

"[t]his Agreement shall be governed by and interpreted under the laws of the State of Ohio", the district court determined that the contract did not provide a clear indication that the parties intended the choice of law clause in the contract to govern tort claims, and therefore the court applied the choice of law rules of the forum state—Indiana—to determine the substantive tort law that would be applied) (relying on *Cerabio LLC v. Wright Med. Tech., Inc*., 410 F.3d 981, 987 (7th Cir. 2005) (recognizing that, because there was no clear indication in the contract that the parties intended for the choice of law clause to govern tort claims, the choice-of-law principles of the forum state applied)).

Here, the language of the parties' contractual choice of law provision in the Distributor Agreement does not suggest that Pennsylvania law applies to anything besides the "agreement" itself and the Court will not rewrite the contract. Therefore the Distributor Agreement does not require any non-contractual claims to be governed by Pennsylvania law. For this reason, statutory claims may be based on other state statutes and tort claims must be evaluated under Indiana choice of law rules to determine which laws will apply. *See e.g., Black Box Corp. v. Markham,* 127 Fed.Appx. 22, 25-26 (3rd Cir. 2005) (noting that the choice of law provision which stated "[t]his agreement will be governed by, and construed and enforced in accordance with, the laws of [Pennsylvania]" was, by its own terms, narrowly drafted to encompass only the underlying merger agreement itself, and not necessarily the entire relationship between the parties) (citing *Jiffy Lube Int'l, Inc. v. Jiffy Lube of Pa.*, 848 F.Supp. 569 (E.D. Pa. 1994) (holding that choice of law clause "only governs the construction, interpretation and enforcement of [the] Agreement" and not the fraudulent inducement and misrepresentation claims that were brought not on the Agreement but on the merger); *Coram Healthcare*, 94 F.Supp.2d at 593; *Benchmark Elec., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 726 (5th

5

Cir. 2003); *Green Leaf Nursery v. E.I. DuPont De Nemours*, 341 F.3d 1292, 1300-01 (11th Cir. 2003); *Krock v. Lipsay*, 97 F.3d 640, 645 (2d Cir. 1996)).

> 2. It is recommended that Indiana's choice of law rules dictate that Pennsylvania law governs the tort claims alleged in counts five, nine, and ten.

The parties have acknowledged that the difference between the laws of Indiana and Pennsylvania are important enough to affect the outcome of the tort claims asserted in counts five, nine, and ten, and therefore, the presumption is that the traditional doctrine of *lex loci delicti*—the law of the place where the injury occurred—will apply. *See Simon v. United States*, 805 N.E.2d 798, 804 (Ind. 2004). However, in *Hubbard Mfg. Co., Inc. v. Greeson*, 515 N.E.2d 1071, 1073 (Ind. 1987), the Indiana Supreme Court noted that *lex loci delicti* is the starting point for conflict of law analysis in tort cases and governs the analysis unless the state in which the tort occurred "is an insignificant contact." 515 N.E.2d at 1073. In those cases, other relevant factors, including the place of the conduct causing the injury, the residence or place of business of the parties, and the place where the relationship is centered, can be considered. *Simon*, 805 N.E.2d at 806. The evaluation ought to focus on the essential elements of the whole cause of action, rather than on the issues one party forecasts will be the most hotly contested. *Id*.

Defendants asserted that Pennsylvania was the location of the last event (where Defendants committed the alleged torts), while Plaintiffs argued that the injuries occurred in Indiana, Idaho, and Oregon (where Plaintiffs' residences and businesses are located). The magistrate judge indicated that were the Court to adopt Plaintiffs' position, then the law of three different states would be applied to each of counts five, nine, and ten—yet Indiana choice of law rules preclude the process of analyzing different issues within the same counts separately under the laws of different states. *See Simon*, 805 N.E.2d at 801-03. As a result, the magistrate judge determined that in considering the

*Hubbard* factors, the state with the most significant contacts between the torts alleged and the action as a whole is Pennsylvania, and thus, Indiana choice of law rules dictated that Pennsylvania law governs counts five, nine, and ten.

No party objected to this conclusion, and the Court adopts it as its own because similar to *Simon*, although Plaintiffs' injuries occurred in states (Indiana, Idaho, and Oregon) different than where the allegedly tortious conduct occurred (Pennsylvania), the most important factor here is where the conduct causing the injury occurred because Defendants' actions and the recovery available to others as a result of those actions should be governed by the law of the state in which Defendants acted—Pennsylvania [DE 48 at ¶¶ 19-21, 61-69].

3. <u>It is recommended that count eight should be dismissed because the relevant subsection of the Tennessee Consumer Protection Act does not create a private cause of action</u>.

Plaintiffs' count eight claim is brought pursuant to the Tennessee Consumer Protection Act (TCPA), and as the magistrate judge noted, presumably it was brought under the catch-all provision of the act, Tenn. Code Ann. § 47-18-104(b)(27) [DE 61 at 15]. The catch-all provision explicitly vests the enforcement of subsection (b)(27) "exclusively in the office of the attorney general and reporter and the director of the division." And for this reason, the magistrate judge recommended the dismissal of count eight, to which no party objected.

However, the elimination of a private right of action under that subsection did not occur until October 1, 2011, *see* 2011 Tenn. Pub. Acts, ch. 510, § 15, and the amendment does not apply to causes of action accruing prior to October 2011. *See Gregory v. Lane*, No. 3:11-CV-132, 2012 WL 5289385, *9 (E.D. Tenn. Oct. 24, 2012) (citing 2011 Tenn. Pub. Acts, ch. 510, § 24).

According to the complaint, Defendants actions took place prior to October 2011, and

7

specifically, the events underlying Lisa and Jim Angles claim under the TCPA appear to all have taken place prior to the statute's modification. As a result, the Court respectfully rejects the magistrate judge's findings in this respect, and instead finds that a private right of action is created under Tenn. Code Ann. § 47-18-104(b)(27) for events occurring prior to October 1, 2011. *See e.g., Sainaam, Inc. v. Am. Nat. Prop. & Cas. Co.*, No. 08-1149, 2008 WL 4346679, *4 (W.D. Tenn. Sept. 16, 2008) (noting that the TCPA provides consumers a private right of action and noting that the broad catch-all provision applies to the insurance industry in a suit brought by a Tennessee corporation); *Fayne v. Vincent*, No. E2007-00642-COA-R3-CV, 2008 WL 657849 (Tenn. Ct. App. Mar. 12, 2008) (individual plaintiffs alleged a claim under subsection (b)(27) of the TCPA).

**B.     Defendants' objections to the report and recommendation.**

   1.     <u>It is recommended that Pennsylvania's "gist of the action" doctrine does not preclude Plaintiffs from asserting counts five, nine, and ten, alternatively to their breach of contract claims</u>.

Defendants argue that Plaintiffs' tort claims alleged in counts five, nine, and ten should be precluded by the "gist of the action" doctrine because the claims are based solely on the contractual distributorship relationship of the parties. The magistrate judge rejected Defendants' argument, and concluded that dismissing the tort claims was premature given that Plaintiffs are entitled to plead alternative theories of liability and discovery might reveal facts sufficient to support claims independent of any contract. Defendants objected to the magistrate's recommendation arguing that even if alternative legal theories are allowed to be pled, in this case Plaintiffs have failed to allege any factual allegations supporting tort claims independent of the contractual relationship. The Court disagrees with the Defendants.

Under Pennsylvania law, the "gist of the action" doctrine operates to preclude a plaintiff

8

from re-casting ordinary breach of contract actions into tort actions. *Air Prods. and Chems., Inc., Eaton Metal Prods. Co.*, 256 F.Supp.2d 329, 340-42 (E.D. Pa. 2003) (citing *eToll, Inc. v. Elias/Savion Adver., Inc*., 811 A.2d 10, 14 (Pa. Super. 2002)). Tort actions lie for breaches of duties imposed by law as a matter of social policy, while contract actions lie only for breaches of duties imposed by mutual consensus agreements between particular individuals. *Air Prods.*, 256 F.Supp.2d at 341-42 (noting that fraud in the inducement of a contract would not necessarily be covered by the gist of the action doctrine because fraud to induce a person to enter into a contract is generally collateral to the terms of the contract itself).

Plaintiffs' complaint notes that the Distributorship Agreements were entered into every year from 1996; however, at some point the agreements were no longer sent but the parties continued to perform, and no termination notices were issued prior to late 2010 [DE 48 at ¶¶ 3, 33-34]. Moreover, the written agreements did not constitute the whole of the relationship between the parties, but Plaintiffs alleged that Defendants made verbal representations to Plaintiffs which they relied upon to their detriment [DE 48 at ¶¶ 3-6, 33-39, 43, 45, 47-51, 55-57, 71, 144-148]. The distributorship arrangement then ended in late 2009 and early 2010 based on a series of alleged fraudulent announcements by Defendants [DE 48 at ¶¶ 8-9, 61-69]. When asked about the contracts, Defendant Steve Demme allegedly stated that there "never was a contract; that the contracts had been abandoned; [and] that he was 'not a contract guy.'" [DE 48 at ¶ 10]. And even though Defendants knew of existing agreements between Plaintiffs and their customers, Defendants allegedly interfered with those relationships and took Plaintiffs' customers after the distributorship arrangement was abandoned [DE 48 at ¶¶ 164-166, 170-171].

The Court does not believe that the gravamen of Plaintiffs' tort claims sound solely in

9

contract. The Court finds that Plaintiffs have in fact pled sufficient facts supporting their tort claims, and thus, it is premature to dismiss Plaintiffs' alternative tort claims at this stage in the proceeding. At this point, it is not clear whether Defendants will admit to or deny the existence of an agreement between themselves and Plaintiffs, or whether even if their was such an agreement, the parties' relationship was entirely dictated by it. *See e.g., Gemini Bakery Equip. v. Baktek*, No. 3204 FEB.TERM 2004, CONTROL 012073, 2005 WL 957635, *3-4 (Pa. Com. Pl. Apr. 11, 2005). Further, Plaintiffs allege facts supporting the existence of contractual relations (or prospective contractual relations) between themselves and third party customers with which Defendants interfered. Such third party relationships were not the subject of the Distributorship Agreements. Thus, the Court will not dismiss the tort claims at this point because it may eventually be found, as supported by the factual contentions asserted by Plaintiffs, that their claims arise outside of any agreement between the parties of this case.

> 2. It is recommended that count five should not be dismissed for failure to state a claim because Plaintiffs sufficiently allege breach of fiduciary duty.

Defendants object to the magistrate judge's recommendation that the request to dismiss count five be denied, because Plaintiffs have sufficiently alleged a claim upon which relief can be granted, consistent with Rule 12(b)(6). Defendants again contend that no factual allegations provide a basis for Plaintiffs' claim of breach of fiduciary duty.

As the magistrate judge correctly noted, under Pennsylvania law, a fiduciary duty is created when there is a confidential relationship between parties, and the duty represents "the law's expectation of conduct between the parties and the concomitant obligations of the superior party." *Basile v. Block*, 777 A.2d 95, 101 (Pa. Super. 2001). "[T]he party in whom the trust and confidence are reposed must act with scrupulous fairness and good faith in his dealings with the other and

refrain from using his position to the other's detriment and his own advantage." *Id*. (quoting *Young v. Kaye*, 279 A.2d 759, 763 (Pa. 1971)). Furthermore, the resulting fiduciary duty may attach "wherever one occupies toward another such a position of advisor or counselor as reasonably to inspire confidence that he will act in good faith for the other's interest." *Id*. at 102 (quoting *Brooks v. Conston*, 51 A.2d 684, 688 (Pa. 1947)). Moreover, those offering business advice may have created a confidential relationship "if others, by virtue of their own weakness or inability, the advisor's pretense of expertise, or a combination of both, invest such a level of trust that they seek no other counsel." *Id*. (citations omitted).

Further, "[t]he concept of a confidential relationship cannot be reduced to a catalogue of specific circumstances, invariably falling to the left or right of a definitional line." *Basile v. Block*, 777 A.2d at 101 (quoting *In re Estate of Scott*, 316 A.2d 883, 885 (Pa. 1974)). "The essence of such a relationship is trust and reliance on one side, and a corresponding opportunity to abuse that trust for personal gain on the other." *Id*. Therefore, "a confidential relationship appears when the circumstances make it certain the parties do not deal on equal terms, but, on the one side there is an overmastering influence, or, on the other, weakness, dependence or trust, justifiably reposed." *Id*. (quoting *Frowen v. Blank*, 425 A.2d 412, 416-17 (Pa. 1981)).

Here, Plaintiffs alleged that a fiduciary relationship existed between themselves and Defendants [DE 48 at ¶¶ 3-6, 33-39, 43, 45, 47-51, 55-57, 71, 144-146]. Plaintiffs specifically alleged that Defendants made repeated promises that they would keep Plaintiffs' best interests paramount and that the distributorship arrangement would remain effective so long as Plaintiffs continued to perform their jobs—and as a result, Plaintiffs allowed Defendants to control their businesses and disclosed otherwise confidential business information to Defendants, such as

11

customer lists and copyrighted works. *Id*. After inspiring confidence in Plaintiffs that Defendants would act in good faith for their benefit, Defendants ended the distributorship arrangement and allegedly interfered with relationships formed between Plaintiffs and their customers [DE 48 at ¶¶ 8-9, 61-69, 164-166, 170-171].

Accepting these allegations as true, the Court finds that Plaintiffs have sufficiently alleged the existence of a legally cognizable fiduciary duty and the breach thereof by Defendants. Specifically, Plaintiffs alleged that Defendants provided reassurances which resulted in Plaintiffs relinquishment of control and Defendants assuming such control, over the day to day functions of their businesses, including control over the customer base, prices and returns, marketing, and ordering/distribution of products. After taking control of Plaintiffs' daily business affairs, Defendants promised to help take care of Plaintiffs and assured them that they could remain distributors so long as they performed their duties.

Although Defendants rely on Pennsylvania law indicating that there is no fiduciary duty in franchise relationships [DE 62 at 3 (citing *Bishop v. GNC Franchising, LLC*, 403 F.Supp.2d 411, 423-24 (W.D. Pa. 2005)], the Court notes that a confidential relationship is not confined to any specific association of the parties. *See Young*, 279 A.2d at 763. And here, Plaintiffs have sufficiently alleged that the parties entered into a joint venture to market the Math-U-See products and grow their respective businesses through that venture, Defendants had an "overmastering influence," and after Plaintiffs placed their trust in Defendants, Defendants allegedly took advantage of Plaintiffs by failing to act in good faith for the benefit of Plaintiffs, thereby causing them injury. *See ITP, Inc. v. OCI Co., Ltd.,* 865 F.Supp.2d 672, 681 (E.D. Pa. 2012) (holding that to state a claim for breach of fiduciary duty, the plaintiff must establish: (1) the existence of a confidential relationship; (2) the

defendant's negligent or intentional failure to act in good faith and solely for the benefit of plaintiff with respect to matters within the scope of the confidential or fiduciary relationship; and (3) an injury to the plaintiff proximately caused by the defendant's failure to act) (citation omitted). Since Plaintiffs have sufficiently alleged that a fiduciary duty arose from the confidential relationship between themselves and Defendants, and that this duty was allegedly breached thereby causing damages to Plaintiffs, the Court overrules Defendants' objection and adopts the magistrate judge's recommendation to deny the dismissal of count five.

> 3. <u>It is recommended that count seven should not be dismissed for failure to state a claim because the Idaho Consumer Protection Act allows for a private right of action which was sufficiently alleged. Further, count eight will not be dismissed for failure to state a claim under the TCPA</u>.

The Idaho Consumer Protection Act (ICPA), like the Federal Trade Commission Act (FTCA), 15 U.S.C. §§ 41-77, outlaws certain 'unfair methods of competition and unfair or deceptive acts or practices.' Idaho Code § 48-603. Idaho Code § 48–603 includes a catchall provision forbidding "[e]ngaging in any act or practice which is otherwise misleading, false, or deceptive to the consumer." *Id*. § 48–603(17). While the ICPA gives the Idaho Attorney General enforcement powers, *id*. at § 48-606, 610-12, 616, similar to those given the Federal Trade Commission under the FTCA, 15 U.S.C. § 45-50, 56, the ICPA also provides for a private cause of action under certain circumstances. Idaho Code § 48-608 ("[a]ny person who purchases or leases goods or services and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by this chapter, . . . may bring an action to recover actual damages.").

Defendants argue that Plaintiffs' claim under the ICPA ought to be dismissed for failure to state a claim because Plaintiffs' allegations do not indicate any purchase of goods or materials from

13

Defendants. However, Plaintiffs allege that Defendants sold them a franchise in violation of Idaho disclosure requirements and then engaged in deceptive practices relative to various services and goods that would be provided to Plaintiffs [DE 48 at ¶157]. The Court finds that these allegations are sufficient to state a cause of action under the ICPA at this stage of the proceedings, and Defendants produce no law to the contrary.[2] Whether or not Defendants alleged conduct actually violates the ICPA will be the subject of dispositive motions after discovery has been conducted; however, for the time being, Plaintiffs' count seven claim sufficiently pleads prohibited practices listed in the ICPA, including misleading, false or deceptive acts in Plaintiffs purchase of goods or services and the resulting loss of money or property.

Lastly, because the Tennessee Consumer Protection Act similarly prohibits a broad range of unfair and deceptive conduct, including the sale of a franchise or distributorship without proper disclosures, *see e.g., Akers v. Bonifasi*, 629 F.Supp. 1212, 1222-23 (M.D. Tenn. 1984)—a claim which can be brought by individual plaintiffs based on events occurring prior to October 2011, *see supra*—the Court declines any request by Defendants to dismiss count eight on insufficiency grounds. Similar to the reasons stated relative to the ICPA claim, Plaintiffs have alleged facts sufficient to support that a claim under the TCPA plausibly exists [DE 48 at ¶¶ 160-162].

### III. CONCLUSION

Therefore, the Court hereby DENIES Defendants' partial objection [DE 62], ADOPTS in

---

[2]Contrary to Defendants' position that the magistrate judge improperly relied on the broad purpose of the ICPA in rendering his decision [DE 62 at 4], instead, the magistrate judge simply noted Plaintiffs reliance on the ICPA's broad purpose [DE 61 at 14]. In any event, Idaho courts have adopted a liberal construction of the ICPA even in private actions, in light of the legislative intent to deter deceptive or unfair trade practices and to provide relief for consumers exposed to proscribed practices. *See e.g., Carroll v. Wilson McColl & Rasmussen*, No. CV 08-22-CWD, 2010 WL 1904779, *3 (D. Idaho May 11, 2010).

part and REJECTS in part the magistrate judge's report and recommendation [DE 61], and DENIES Defendants' motion to dismiss [DE 51] in its entirety.

SO ORDERED.

ENTERED:   March 4, 2013

/s/ JON E. DEGUILIO
Judge
United States District Court